91 So.2d 200 (1956)
STATE of Florida, Appellant,
v.
Ola COLES, Appellee.
Supreme Court of Florida, Special Division B.
December 5, 1956.
*201 Richard W. Ervin, Atty. Gen., and Reeves Bowen, Asst. Atty. Gen., for appellant.
Herman W. Goldner, St. Petersburg, for appellee.
O'CONNELL, Justice.
Defendant, Ola Coles, was tried for manslaughter. The jury returned a verdict of guilty. On motion therefor the trial judge granted a new trial. The State brings this appeal. We are required to determine whether the trial judge abused his discretion in granting the motion for new trial.
That defendant killed Robert Foster, by shooting him with a shotgun shortly after 8 o'clock on the morning of May 13, 1955, was undisputed at the trial and is not disputed now. Defendant pleaded self-defense.
The facts surrounding the killing are relatively simple.
For about seven months previous to his death Foster, although not married to defendant, lived in defendant's home occupying her bed most of the time. He came to live with defendant with her permission, however, she stated that she had thereafter asked him to leave her home, but he refused.
On the evening prior to the killing Foster came home in a drunken condition. He and defendant were in bed together by 10 P.M. Foster argued with, cursed and threatened to kill defendant during much of the night. Annie Lee Davis, a roomer in defendant's house, testified that she was awakened by the argument and went to the defendant's room about 2 A.M. That Foster was holding a knife on defendant. That Foster told her their argument was none of her business so she went back to bed. Defendant testified that Foster "jugged" (stuck) her in the stomach with the knife during the night making a small cut.
Defendant and Foster arose on the fateful morning at about 6:30 A.M. Daniel Crooms, who was a night lodger and who slept on a couch or cot in the living room, awakened about the same hour, as did Annie Lee Davis.
Defendant began to prepare breakfast. Foster began cursing her in the kitchen. Defendant claimed that Foster struck her with his hand and threatened to kill her. After the kitchen episode Foster joined Crooms in the living room and called to defendant to bring his shoes, which she did. She claimed that when she did so Foster had his knife beside him and got up again threatening to kill her.
Defendant left the living room, went to her bedroom, got her shotgun and two shells. She then took a shot at Foster, shooting from the kitchen into the living room. She missed. According to Crooms, Foster at *202 this time was sitting in the living room putting on his socks. Defendant departed the house through a rear door, leaned the gun against the house, went to a neighbors and placed a call to the police. According to her the line was busy so she came back, picked up her gun, went to the front of the house and took up a battle station behind a car which was parked in front of but slightly down the street from her house.
At this point, Annie Lee Davis was sitting on the front porch, Crooms and Foster were still in the living room.
Foster went to the front screen door and standing on the inside thereof opened it slightly and said to defendant, "You thought you shot me, didn't you * * * but you didn't. Come on back in the house, I'm not going to bother you."
There is no material dispute on the events which transpired up to this point.
Annie Lee Davis testified that after Foster came to the screen door and made the remarks set forth above that "* * * she (defendant) just throwed it (the gun) up and shot." She stated that she heard Foster say nothing after asking defendant to come back into the house. This witness was some 8 or 10 feet from Foster at the time. Defendant was several times that distance from Foster.
Daniel Crooms stated that Foster walked to the screen door, opened it slightly with his left hand, spoke to the defendant about coming back in, then turned his head toward Crooms and to Crooms, but not in a loud voice, "* * * said something about cutting her head off or something." Crooms said that just as Foster got those words out of his mouth he was shot and fell back into the room.
Defendant stated that after Foster asked her to come back in she heard him make the statement to Crooms about cutting her head off, that she could see his knife in his pocket, that he put his hand in his pocket, and that "he acted like he started to come after me". She then shot him because he had threatened to kill her and she was afraid he would do so.
Foster died instantly. Crooms, Annie Lee Davis and defendant were the only witnesses to the killing. The first two testified for the State. Defendant was her sole witness.
The evidence showed that Foster's treatment of the defendant on the evening prior to and the morning of the killing was not unusual, but rather was customary; that he had threatened to kill her on numerous occasions, had beaten her on at least one other occasion, always brandished a knife and argued with and cursed her frequently. Yet in spite of all his threats and abuse he never made any attempt to kill her.
The jury found the defendant guilty. The trial judge awarded her a new trial. In his order granting new trial the trial judge assigned as his reasons that (1) the State did not fully and adequately maintain the burden of proof, and (2) that the defendant established as a matter of law that the killing of Foster was an act of self-defense and therefore justifiable homicide.
The only question in controversy in the court below was whether the killing of Foster was in self-defense. On this appeal we are required to determine if there was sufficient evidence to support the verdict of the jury, for where there is substantial evidence to support the verdict of the jury a new trial should not be granted, although other evidence may be in conflict. Ivey v. State, 1938, 132 Fla. 36, 180 So. 368. Where the evidence is sufficient to sustain the verdict a new trial should not be granted unless it is clear that injustice will result if not granted. Kirkland v. State, 1927, 93 Fla. 172, 111 So. 351.
If we determine that there was substantial evidence to support the verdict of the jury we must conclude that the trial judge abused his discretion in granting a new trial, there being no showing that injustice will result if the new trial is not granted.
*203 The evidence here was sufficient to support the verdict of manslaughter. Only the evidence as to whether defendant heard Foster threaten to cut her head off if she came back into the house and whether he started out the door after her is in dispute. These are the only actions on Foster's part which defendant could claim would constitute the basis for fear of imminent danger to the defendant, although we do not hold that such actions would be sufficient to justify her killing Foster.
The jury would be within their province in believing the testimony of Annie Lee Davis that she did not hear the last threat and in also believing Daniel Crooms on the same subject. They could have well believed Crooms that Foster made no move to go out the door toward defendant. The jury had the right to consider also that the threats and actions of Foster on the morning of the killing and the previous evening were nothing more than his usual conduct toward the defendant and were not as likely to create a reasonable fear of danger as would an isolated instance of threats and abuse on the part of one otherwise peaceful and kind. The jury further had the right to consider that when the first shot, which missed Foster, was fired Foster, according to Crooms, was seated putting on his socks, that defendant left the house, tried to make a phone call, returned, picked up her gun, proceeded to the front of the house, not in an effort to avoid Foster or to protect herself from Foster who had not followed her, but rather it appears to us to either drive him from her house or to await his appearance and to shoot him down as she did. It is obvious that defendant had reached a position of safety from Foster long prior to the firing of the fatal shot.
We must conclude that there was substantial evidence to support the verdict of the jury and that the State did not fail to carry the burden of proof required of it.
Nor can we agree with the trial judge that the evidence in this cause established self-defense as a matter of law. To hold such under the facts of this case would be to invite a person who has been threatened with or exposed to danger of death or great bodily harm at the hands of another, but who has reached a place of safety, to return to the aggressor and fight a pitched battle, rather than to seek the aid of the law in settlement of the dispute.
One who seeks to excuse homicide on the ground of self-defense must show that the killing was necessary at the time, that he did all he reasonably could to avoid it, and that it was necessary to protect himself from such great bodily harm as to give him a reasonable apprehension that his life was in immediate danger. Gladden v. State, 1868, 12 Fla. 562. Further when the matter of threats is considered in relation to proof of self-defense there must be some evidence of an overt act expressing an intention to execute immediately the threats such as will naturally induce a reasonable belief that the person threatened will lose his life or suffer serious bodily harm if he does not immediately take the life of his adversary. Garner v. State, 1891, 28 Fla. 113, 9 So. 835. It does not appear to us that the evidence so conclusively showed the existence of the essentials of self-defense as to preclude the jury from returning a verdict of guilty. Yet in effect this is what the trial judge held.
While it is true that a determination of what facts constitute justifiable homicide is a matter of law, it is for the jury to determine the existence of the facts in a particular case. It was for the jury in this case to say, all the circumstances considered, whether a reasonably prudent and cautious man would have believed himself in such danger of death or great harm from the deceased Foster, as to justify killing him, not for the trial court to say that the facts in this case as a matter of law would create that apprehension in a reasonably cautious and prudent person. Harris v. State, 1918, 75 Fla. 527, 78 So. 526. The jury obviously concluded that defendant was not justified in killing Foster. *204 There was ample evidence upon which they could have reached this conclusion.
We are fully conscious of and are committed to following the rule of law that an appellate court will not disturb an order of a trial court granting a new trial unless it appears that the trial judge abused his discretion. However, where the only real question is the sufficiency of the evidence to sustain a verdict, as we construe this case to be, and where there is sufficient evidence to sustain the verdict, we do not believe that the trial court is warranted in pitting his judgment against that of the jury. It is error for the trial court to do so. Seaver v. Stratton, 1937, 133 Fla. 183, 183 So. 335.
For the reasons above cited the order granting new trial is reversed.
DREW, C.J., ROBERTS, J., and CROSBY, Associate Justice, concur.