449 So.2d 882 (1984)
Juan Laureano GONZALEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 82-1837.
District Court of Appeal of Florida, Third District.
April 10, 1984.
Rehearing Denied May 30, 1984.
*884 Bennett H. Brummer, Public Defender and Paul Morris, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Jack B. Ludin, Asst. Atty. Gen., for appellee.
Before HUBBART, FERGUSON and JORGENSON, JJ.
FERGUSON, Judge.
Appellant asserts as points on appeal: (1) it was error to deny his motion to suppress a statement obtained from him by officers who knew that he was represented by counsel, after he had invoked his right to counsel, where the interrogation was initiated by the officers in violation of his fifth amendment rights; and (2) it was error to sentence him for felony murder and the underlying felony. By way of cross-appeal, the state asserts that it was error to grant appellant a new trial on the robbery count of the six-count indictment.
Appellant was charged with six felonies: Count 1, premeditated or felony (robbery) murder of Perez; Count 2, premeditated or felony (robbery) murder of an unidentified person; Count 3, robbery of marijuana belonging to Perez; Count 4, attempted premeditated or felony (robbery) murder of Garcia; Count 5, possession of in excess of 2,000 pounds but less than 10,000 pounds of marijuana; Count 6, carrying a concealed firearm. A jury returned verdicts as follows: as to Counts 1 and 2, guilty of third-degree murder, a lesser offense; Counts 3 and 5 guilty as charged; Count 4, guilty of attempted third-degree murder; Count 6, not guilty. Appellant was sentenced to fifteen years each on Counts 1 and 2, five years on Count 4, and twenty-five years on Count 5, all to run concurrently. On Count 3, charging robbery, the verdict was set aside and new trial granted on a finding that:
1. The verdict as to count three was irreconcilably in conflict with counts one, two, four and five.
2. The verdict as to count three was contrary to the weight of the evidence.
The distilled facts are as follows.
On August 21, 1981, at about 1:00 a.m., Officers Petow and Perez, while headed toward a South Dade nursery in response to a burglar alarm, stopped a truck which appeared to be without a tag. Appellant was the driver. Two others, later identified as Martinez and Capote, occupied the front passenger seats. The three were instructed to exit the vehicle.
Officer Perez inquired of Gonzalez what he was doing in the area at that hour of night and asked for a driver's license. Gonzalez produced his driver's license, and in response to a question about the missing tag, responded that the truck had a tag which was obstructed by a lifter. Officer Petow observed a black purse on the front seat. He touched the bag and upon feeling what he believed to be a weapon he opened the bag, discovering a gun which he unloaded. Officer Perez inquired as to whether any of the others had weapons. Capote produced a weapon from under his shirt. Both Gonzalez and Capote were arrested for carrying concealed firearms. The third person, Martinez, who had been sitting in the middle nearest the purse containing the firearm, fled from the scene. Gonzalez and Capote were placed in the police car. Because of the strong smell of marijuana, Officer Petow opened the rear door of the truck. He discovered bales of marijuana. Appellant was advised of his Miranda rights but no questions were asked.
Later that morning, still on August 21st, appellant was again advised of his Miranda rights at police headquarters. Officer Riley informed appellant that he was under arrest for trafficking in narcotics, and that two bodies were found near the area where he was arrested. Appellant responded that he had accepted an offer to go to the farm to move furniture and that he knew nothing of what was going on, as he had remained *885 outside the farm while the truck was driven onto the premises by two other men who later returned to pick him up. When questioned about the double homicides, which Officer Riley believed to be related to the marijuana-ladened truck, Gonzalez said that he did not wish to talk.
The next contact with Gonzalez was at his home on October 28, 1981. He had not been in custody for some time. When he was asked by Officer Torres whether he was willing to cooperate in the investigation of the homicides, Gonzalez declined to cooperate and informed the officers that he was represented by counsel. Officers Torres and Sessler next saw Gonzalez sometime between December and April 1st the next year, at which time Gonzalez told them that he would call Officer Torres at some later date. The officers did not attempt to communicate with appellant's counsel because they knew that she was representing another suspect who could pose a threat to Gonzalez if that client were made aware that Gonzalez was willing to cooperate with authorities.
On April 1, 1982, after a lengthy investigation which connected Gonzalez to the homicides, he was arrested by Torres and Sessler at his home pursuant to a warrant. As Officer Torres took Gonzalez away, he observed Mrs. Gonzalez attempting to reach appellant's attorney on the telephone. Officer Torres testified that on April 1st, at the station, he advised Gonzalez of his Miranda rights as required in light of the new arrest  just as had been done on August 21, 1981. Gonzalez expressed a willingness to talk, signed a rights waiver form, and gave an inculpatory statement. Gonzalez, according to Torres, did not ask for an attorney during the time they were together. Gonzalez was provided with coffee and cigarettes and taken to a restaurant while the statement was being transcribed. The statement was the subject of a motion to suppress, denial of which presents the first issue on this appeal.

I. PRIVILEGE AGAINST SELF-INCRIMINATION
In support of the contention that his statement was illegally obtained, appellant relies on Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) which held:
[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. 451 U.S. at 484-85, 101 S.Ct. at 1884-85, 68 L.Ed.2d at 386.
The Edwards court relied upon the fifth amendment right identified in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which is the right to have counsel present at any custodial investigation. Appellant argues here that according to Edwards, his assertion of the right to counsel following the arrest for drug trafficking and firearm possession was still effective to preclude questioning about the murder and robbery charges which were the subject of a later arrest, even though he was not in continuous custody. We must consider the continued efficacy of the Edwards principle in light of events subsequent to appellant's assertion of the right to counsel made on August 21, 1981 and October 28, 1981, namely (1) appellant was not in custody during the five-month interval between the last invocation of the right and the taking of the statement, (2) appellant's subsequent arrest was on different charges, which required police to again advise him of his rights.
No Florida case seems to have considered this precise question, and those which have applied the Edwards teaching to find that statements were illegally obtained are easily distinguishable on their *886 facts. See State v. Padron, 425 So.2d 644 (Fla. 3d DCA 1983) (continuous custody); Silling v. State, 414 So.2d 1182 (Fla. 1st DCA 1982) (continuous custody, same offense); Porter v. State, 410 So.2d 164 (Fla. 3d DCA 1982) (continuous custody, same offense).
We hold that Edwards is not applicable to preclude the admission into evidence of a defendant's statement where he, having exercised the right to remain silent, and having obtained the services of counsel, leaves police custody, is later arrested on other charges, then, following an intelligent waiver of the right against self-incrimination, gives an inculpatory statement. There is no practical reason for a different result where, as here, an accused has had several months to reassess the earlier asserted right to counsel.[1]
Our holding is consistent with two recent decisions of the United States Supreme Court which, on revisitation of Edwards, have rejected the notion that it states a "per se" rule which can be universally applied. Oregon v. Bradshaw, ___ U.S. ___, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983); Wyrick v. Fields, 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982). Instead, the high court has interpreted Edwards to require an examination of the "totality of the circumstances" in order to determine if a fifth amendment violation has occurred. Wyrick, 459 U.S. at 47, 103 S.Ct. at 396, 74 L.Ed.2d at 218. These cases, however, focused on the issue of what constitutes a "defendant-initiated" conversation under Edwards, and did not discuss the tempering effect of a no-continuous-custody situation.
Two reported cases have decided this exact issue. We find highly persuasive the decision in United States v. Skinner, 667 F.2d 1306 (9th Cir.1982), cert. denied, ___ U.S. ___, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983), in which Edwards was held distinguishable. The court relied heavily on the fact that Skinner, unlike Edwards, was not in continuous custody between the time he invoked the right to counsel and the next day when he gave a full confession. It was noted that Skinner arrived at the police station voluntarily and talked to investigators. He was free to leave the station and did leave after stating that he wanted to talk to a lawyer before answering more questions. When he was arrested the next day, he intelligently and knowingly waived his right to counsel, then immediately gave a confession. The court emphasized that prior to the second interrogation, Skinner "had the opportunity to contact a lawyer or to seek advice from friends and family if he chose to do so." Id. at 1309. Skinner was followed in Brown v. State, 661 P.2d 1024 (Wyo. 1983), where the court found it dispositive that the defendant was not held in continuous custody and was free to obtain counsel any time prior to giving the challenged statement. Similarly here, having already retained an attorney, appellant had the opportunity to confer with his attorney upon being confronted with the new charges.

II. DOUBLE JEOPARDY
There is merit in the second point on appeal. Appellant cannot be convicted, much less sentenced, in a single trial for felony murder and the felony underlying the felony murder. The underlying felony here is a necessarily included offense of the felony murder charge, which fails the "Blockburger Test"[2] for double jeopardy. *887 See Bell v. State, 437 So.2d 1057 (Fla. 1983), relying on Harris v. Oklahoma, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), United States v. Gaddis, 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976), United States v. Buckley, 586 F.2d 498 (5th Cir.1978), cert. denied, 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979).
Buckley held that "where a defendant is improperly convicted for a lesser included offense, the proper remedy is to vacate both the conviction and sentence on the included offense, leaving the conviction and sentence on the greater offense intact." Buckley, 586 F.2d at 505. The gloss we place upon that holding, as applied to this unique situation  where the included offense, trafficking in marijuana, carries a greater penalty than the offense in which it is included, third-degree felony murder[3]  is that for the purpose of deciding which conviction and sentence will stand, the greater offense (same as the higher offense) is the one which carries the more severe penalty. See Rushing v. State, 355 So.2d 501 (Fla. 2d DCA 1978). Therefore, appellant's convictions and sentences for third-degree felony murder and attempted third-degree felony murder must be vacated.

III. INCONSISTENT VERDICTS
The first point of the cross-appeal challenges the court's finding that the jury verdict of guilty on the robbery count is inconsistent with the guilty verdicts on third-degree murder, attempted third-degree murder and possession of marijuana. We find no legal inconsistencies.
The jury was instructed on first-degree felony murder with robbery as the underlying felony. It was also instructed, as a lesser degree of the homicide offenses, on third-degree murder with trafficking in narcotics as the underlying felony. It is argued that the finding of guilt on the lesser offense of third-degree murder is, in effect, an acquittal on the charged offense of first-degree felony murder, of which robbery is an essential element. We disagree. An exception to the general rule which permits inconsistent verdicts is recognized where an acquittal of the underlying felony effectively holds the defendant innocent of a greater offense involving that same felony. The classic legal inconsistency would be presented here if the defendant had been acquitted of trafficking in narcotics (as charged in Count 5) while being found guilty as to third-degree murder while trafficking in narcotics. See Mahaun v. State, 377 So.2d 1158 (Fla. 1979) (where defendant was charged with third-degree murder with aggravated child abuse as the underlying felony, and in same trial was "acquitted" of aggravated child abuse separately charged, reversal of the conviction for felony murder was required). Logical inconsistencies, *888 as distinguished from legal inconsistencies, are acceptable, Goodwin v. State, 157 Fla. 751, 26 So.2d 898 (1946); Gonzalez v. State, 440 So.2d 514 (Fla. 4th DCA 1983); Streeter v. State, 416 So.2d 1203 (Fla. 3d DCA 1982), as a jury's exercise of its power of lenity. See McCloud v. State, 335 So.2d 257, 259 (Fla. 1976); Damon v. State, 397 So.2d 1224, 1228 n. 10 (Fla. 3d DCA 1981).

IV. WEIGHT OF THE EVIDENCE
The second part of the cross-appeal challenges the court's grant of a new trial on the charge of robbery based on the finding that the verdict was contrary to the weight of the evidence.
We begin the analysis with a recognition of the general principle that the weight of the evidence is a standard of proof given to the trier of fact by which it decides which side of an issue or cause has presented the greater amount of credible evidence. Tibbs v. State, 397 So.2d 1120, 1123 (Fla. 1981), aff'd 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Accordingly, Florida Rule of Criminal Procedure 3.600(a)(2) authorizes a trial judge to grant a new trial if it is established that "the verdict is contrary to ... the weight of the evidence." The process of determining whether the verdict is consistent with the weight of the evidence necessarily requires the trial judge to invade the fact-finding arena  to act, in effect, as an additional juror. Tibbs, 397 So.2d at 1123 n. 9.
As a general proposition, an appellate court is not permitted to reweigh conflicting evidence submitted to the fact-finder. Tibbs, 397 So.2d at 1123.[4] This court has already stated that the scope of review on appeal from an order granting a new trial in a criminal case  the same as that in a civil case  is whether the appellant has made a clear showing that the trial court abused its discretion. State v. Tresvant, 359 So.2d 524, 527 (Fla. 3d DCA 1978), cert. denied, 368 So.2d 1375 (Fla. 1979). There is no authority for the proposition that the scope or nature of review should be different where the grant of a new trial is based on the weight of the evidence rather than on an error of law or procedure.[5] No abuse of discretion is demonstrated where the action of the court is supported by competent and substantial evidence.
Here the court apparently found that all of the elements of the robbery offense had been established by some evidence, but the order granting the new trial fails to specify the nonbelievable evidence. A trial court must give express reasons which will support its finding that the verdict is against the manifest weight of the evidence in order to facilitate intelligent review. Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978); Gould v. National Bank of Florida, 421 So.2d 798 (Fla. 3d DCA 1982); White v. Martinez, 359 So.2d 7 (Fla. 3d DCA 1978). We are therefore compelled to examine the entire record.
It was suggested in argument that a lack of direct proof that the appellant knew the marijuana in his possession was the property of persons other than his codefendants was the basis of the court's ruling. Assuming that there was a lack of *889 direct proof on the issue, the jury could have relied on the circumstantial evidence and found that, in totality, there was no reasonable hypothesis other than that appellant knowingly participated in the taking of property by force from one who had a greater right to possession. See Love v. State, 438 So.2d 142 (Fla. 3d DCA 1983) (jury could find from circumstantial evidence that defendant used force to overcome deceased victim's resistance to the taking of property, thereby satisfying elements of robbery). Here, however, the circumstantial evidence conflicted with appellant's testimony that he was not aware that the property which he was hired to transport belonged to someone other than his employer.
The trial court was empowered to reweigh the conflicting evidence and decide that the circumstantial evidence on the issue of knowledge was insubstantial, and did not preponderate over appellant's own testimony.[6]See State v. Coles, 91 So.2d 200 (Fla. 1956) (where there is substantial evidence which supports the jury verdict a new trial should not be granted even though evidence is conflicting); Urga v. State, 160 Fla. 740, 36 So.2d 421 (1948) (same); State v. Riggins, 314 So.2d 238 (Fla. 4th DCA 1975), cert. denied, 333 So.2d 464 (Fla. 1976) (same). On review of the record it is not clearly shown that the trial court abused its discretion.
We affirm the conviction and sentence for trafficking in marijuana and remand to the trial court to vacate the convictions and sentences for murder and attempted murder committed in the course of trafficking in marijuana. We affirm the cross-appeal which challenges the order granting a new trial on the robbery conviction.
Affirmed in part, and remanded for further proceedings.
NOTES
[1] Florida cases have previously decided that the Edwards test does apply where a suspect in continuous custody who has invoked his right to counsel is subsequently questioned in regard to charges different from those which were the subject of the initial investigation. Luman v. State, 447 So.2d 428 (Fla. 5th DCA); State v. Padron, 425 So.2d 644 (Fla. 3d DCA 1983). Accord State v. Routhier, 137 Ariz. 90, 669 P.2d 68 (1983) (en banc); Radovsky v. State, 296 Md. 386, 464 A.2d 239 (1983).
[2] Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under Blockburger, the same act violates two statutes only if "each [statutory] provision requires proof of an additional fact which the other does not." Id. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. Trafficking in narcotics and third-degree murder by trafficking in narcotics do not each require proof of an additional fact which the other does not.

Third-degree murder is an unlawful killing, without design, committed while perpetrating any felony except a felony which would make the killing first-degree murder. § 782.04(4), Fla. Stat. (1981). Trafficking in narcotics  because it is not a felony which would support first-degree felony murder  is statutorily an offense underlying third-degree murder. While there are alternative means of committing first-degree and second-degree murder, which according to some critics will permit a conviction of both the homicide and the underlying felony, there are no alternative means to find a person guilty of third-degree murder other than by establishing an appropriate underlying felony in the course of which a homicide occurred. Mahaun v. State, 377 So.2d 1158, 1160 (Fla. 1979).
[3] Under the statute applicable to appellant's convictions, the offense of trafficking in marijuana is a first-degree felony, Section 893.135(1)(a) Florida Statutes (1981), punishable by a term of imprisonment not to exceed thirty years. § 775.082(3)(b), Fla. Stat. (1981). The offense also carries a mandatory minimum term of imprisonment of five calendar years and a fine of $50,000. § 893.135(1)(a)2., Fla. Stat. (1981) (where quantity of cannabis involved is 2,000 pounds or more, but less than 10,000 pounds). On the other hand, murder in the third degree constitutes a felony of the second degree, Section 782.04(4), Florida Statutes (1981), and is punishable by a term of imprisonment not exceeding fifteen years. § 775.082(3)(c), Fla. Stat. (1981).

We note that the legislature has since amended the homicide statutes to provide that felony murder in the course of a trafficking offense is murder in the first degree and constitutes a capital felony. § 782.04(1)(a)2.a, Fla. Stat. (1983).
[4] The reweighing of conflicting evidence which is permitted by the trial court on a motion for new trial is distinguished from an examination for "sufficiency of the evidence," a much broader scope of review which may be undertaken by the trial or appellate court. Tibbs, 397 So.2d at 1125-26.
[5] By this statement we are addressing a question which Tibbs purports to leave unresolved, i.e., whether an appellate court actually "reweighs" the evidence in reviewing a trial court's grant or denial of a motion for new trial based on the ground that the verdict is contrary to the weight of the evidence. Tibbs, 397 So.2d at 1123 n. 12. Two earlier Florida Supreme Court cases, which we follow here, appear to have stated the applicable law. State v. Coles, 91 So.2d 200 (Fla. 1956) (on appellate review of trial court's order granting new trial based on insufficiency of the evidence, standard for determining abuse of discretion is whether there is substantial evidence to support the jury verdict); Urga v. State, 160 Fla. 740, 36 So.2d 421 (1948) (using "substantial evidence" test where new trial granted because verdict found contrary to law and the weight of the evidence).
[6] Arguably, the finding is simply that the circumstantial evidence does not exclude every reasonable hypothesis of innocence, which amounts to a finding of insufficiency. Since, however, this is not the express ruling of the court, and appellant does not disagree with the ruling, our scope of review is limited. See note 4, supra; McArthur v. Nourse, 369 So.2d 578 (Fla. 1979).