485 So.2d 884 (1986)
STATE of Florida, Appellant,
v.
Arthur McMAHON, Appellee.
No. 84-2471.
District Court of Appeal of Florida, Second District.
March 26, 1986.
*885 Jim Smith, Atty. Gen., Tallahassee, and Peggy A. Quince, Asst. Atty. Gen., Tampa, for appellant.
James Campbell, New Port Richey, for appellee.
SCHEB, Acting Chief Judge.
A jury found appellee Arthur McMahon guilty of second degree murder in the beating death of his mother. Thereafter, the trial court granted appellee's motion for a new trial, concluding the verdict was "against the weight of the evidence." The state appeals. We reverse.
The evidence produced at trial revealed that on the night of March 23, 1984, Deputies McVey and Cleveland of the Pasco County Sheriff's Department responded to a call concerning a domestic disturbance at the residence of the appellee and his mother. As the officers approached the house, they saw the appellee standing in the doorway with blood on his hands and clothes. When Deputy McVey asked him what happened, he responded that he "threw his mother around."
Inside the house, the deputies found overturned tables and chairs and broken glass. They also found the appellee's mother sitting on a boxspring in one of the bedrooms. She was bleeding from severe lacerations on her legs, arms, and face. It was later discovered that the appellee had hit her repeatedly with a fishing pole. Both officers testified that appellee's mother asked them to keep her son from hurting her anymore.
That night Deputy McVey placed the appellee under arrest for aggravated battery. Three weeks later appellee's mother died, and the state charged the appellee with second degree murder. The case proceeded to trial with appellee giving notice of his intent to rely on the insanity defense.
The state presented testimony on the issue of the appellee's sanity from four lay-witnesses. The two deputies who responded to the disturbance recalled that the appellee had answered their questions, understood the Miranda warnings, and followed their instructions. On this basis, the officers believed the appellee to be sane at the time he beat his mother. Similarly, a crime scene investigator and an acquaintance of the appellee thought the appellee to be sane based on their observations of him before and shortly after the beating.
The appellee presented testimony from three psychiatrists and one psychologist who conducted clinical examinations of the appellee during a period of two weeks to two months after the incident. Three of these experts opined that the appellee was insane when he assaulted his mother. The fourth testified that the appellee suffered from latent schizophrenia and explosive personality for a period from 1969 to 1971. Yet, this doctor testified that, even then, the appellee knew right from wrong. This psychiatrist had not examined the appellee subsequent to 1971.
Two lay witnesses also testified for the defense on the issue of insanity. Phillip Neal was with the appellee on the day of the beating. He recalled that for the better part of the day, he and the appellee *886 drank alcohol, smoked marijuana, and used cocaine. However, on cross-examination, he admitted the appellee did the driving that day, and it did not appear that appellee's faculties were impaired.
Joann LaRosa, who lived in a garage apartment behind the McMahon house, was awakened on the night of the 23rd by her children who heard the disturbance. When LaRosa went into the main house, she saw appellee's mother sitting on the boxspring with "blood all over" and saw the appellee holding a fishing pole. Although LaRosa was heavily sedated, she believed the appellee was "out of his mind" that night.
The jury returned a verdict finding the appellee guilty of second degree murder, and appellee filed a motion for new trial. The court granted the motion, stating that the evidence produced by the state was not adequate to prove appellee's sanity beyond a reasonable doubt. Thus, the court determined that a new trial was required because the verdict was against the weight of the evidence. This appeal by the state ensued.
Clearly, where, as here, the evidence raises a reasonable doubt as to a defendant's sanity, the presumption of sanity vanishes and the burden shifts to the state to prove beyond a reasonable doubt that the defendant was sane at the time of the offense. Yohn v. State, 476 So.2d 123 (Fla. 1985); Walker v. State, 479 So.2d 274 (Fla. 2d DCA 1985).
In Florida, the test for insanity, when used as a defense to a criminal charge, is a modified version of the M'Naghten Rule. Wheeler v. State, 344 So.2d 244 (Fla. 1977), cert. denied, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979). This test, as incorporated into the recently revised standard jury instruction on insanity, states that a person is considered to be insane if, at the time of the offense, the individual had a "mental infirmity, disease or defect" and, as a result, did not know what he was doing or did not know that what he was doing was wrong. Florida Standard Jury Instruction (Criminal) 3.04(b); see Standard Jury Instruction Re: Criminal Cases, 483 So.2d 428 (Fla. 1986).
The determination of a defendant's mental condition at the time of the offense is a question of fact for the jury. Byrd v. State, 297 So.2d 22, 24 (Fla. 1974); Collins v. State, 431 So.2d 225 (Fla. 4th DCA 1983). Here, in seeking to sustain the trial court's ruling, the appellee emphasizes the state's failure to present any expert testimony on the issue of insanity. It is true the state presented only lay witness testimony regarding appellee's sanity. However, it was the jury's prerogative to rely solely on the lay testimony and disregard the testimony of appellee's expert witnesses. Cronin v. State, 470 So.2d 802 (Fla. 4th DCA 1985); Sands v. State, 403 So.2d 1090 (Fla. 3d DCA 1981). Obviously, the jury did just that in finding the defendant guilty.
Given the jury's right to judge the credibility of witnesses and its right to accept or reject expert testimony, we conclude that the verdict was not contrary to the weight of the evidence. Two of the state's witnesses, Deputies McVey and Cleveland, observed the appellee just moments after the offense. The appellee's actions and verbal responses indicated to the officers that the appellee was sane. Also, the crime scene investigator and an acquaintance who saw the appellee within hours of the crime were convinced he was sane. No one suggests that the testimony of these lay witnesses was unworthy of belief.
On the other hand, the only witness for the defense who had an opportunity to see the appellee at a time close to the offense was Joann LaRosa. Yet, her opinion that the appellee was insane that night was based on her perception of him at a time when she was heavily sedated. Further, as noted, one of the appellee's expert witnesses testified he had not evaluated the appellee for over thirteen years. Another examined the appellee two weeks after the crime, and the remaining two psychologists based their opinions on evaluations of appellee two months after the assault.
*887 The proper standard of appellate review for an order granting a new trial is whether the trial judge abused his discretion. Gonzalez v. State, 449 So.2d 882 (Fla. 3d DCA 1984); State v. Haliburton, 385 So.2d 11 (Fla. 4th DCA 1980). As stated by our supreme court in State v. Coles, 91 So.2d 200, 204 (Fla. 1956):
We are fully conscious of and are committed to following the rule of law that an appellate court will not disturb an order of a trial court granting a new trial unless it appears that the trial judge abused his discretion. However, where the only real question is the sufficiency of the evidence to sustain a verdict, as we construe this case to be, and where there is sufficient evidence to sustain the verdict, we do not believe that the trial court is warranted in pitting his judgment against that of the jury. It is error for the trial court to do so.
Accordingly, after review of the record we have determined that there is substantial, competent evidence to support the jury's verdict. Gonzalez, 449 So.2d at 888. Therefore, the trial judge abused his discretion in awarding appellee a new trial.
Reversed with directions to reinstate the jury's verdict finding the appellee guilty of second degree murder.
HALL and SANDERLIN, JJ., concur.