771 So.2d 1256 (2000)
The STATE of Florida, Appellant,
v.
Darrell L. ROBINSON, Appellee.
No. 3D99-3037.
District Court of Appeal of Florida, Third District.
November 15, 2000.
Robert A. Butterworth, Attorney General, and Regine Monestime, Assistant Attorney General, for appellant.
Bennett H. Brummer, Public Defender, and Marti Rothenberg, Assistant Public Defender, for appellee.
Before GODERICH and SORONDO, JJ., and NESBITT, Senior Judge.
NESBITT, Senior Judge.
After the completion of defendant's trial for sexual battery on a victim under twelve years of age, see § 794.011(2) Fla. Stat. (1999), the jury returned a verdict of guilty as charged. As a capital felony, defendant's sentence was to be life in prison. The Defense filed a Motion to Mitigate Defendant's Sentence, followed by a Motion for New Trial. The defendant argued that the trial court had erroneously denied his earlier motion to instruct the jury on the lesser offenses of attempted capital sexual battery and lewd and lascivious behavior. An addendum to the motion argued that the verdict was contrary to the weight of the evidence. After considering the motions, the trial court granted the Motion for New Trial, concluding that instructions *1257 on attempted capital sexual battery and lewd and lascivious behavior should have been given and that the jury's verdict was against the weight of the evidence. While we disagree with the trial judge's conclusion that he had erroneously denied the additional charges sought, we agree with the judge that he had the right to conclude that the verdict was against the weight of the evidence. See Fla. R.Crim. P. 3.600(a)(2). It is on that basis that we affirm the order under review.
The victim, eight-year-old S.S., testified that the defendant was babysitting her and her siblings. S.S. was wearing a T Shirt and underpants and lying on her mother's bed when the incident occurred. The defendant laid down on the bed behind her. At some point, as she began to fall asleep, the defendant moved her panties aside and stuck his finger inside her "private part". S.S. said that she knew it was his finger because it was long, hard and it hurt. She also said that he did not touch her anywhere else. She said that she tried to close her feet, but he opened them with his elbow.
Two days later, S.S. told her aunt, Daisy Anderson, about the incident. Anderson told S.S.'s mother and police. According to Anderson, S.S. told her: "Darrell [the defendant] put his finger inside of me." Dr. Simmons, director of the Rape Treatment Center at Jackson Memorial hospital testified that she conducted an interview and examination of the girl. During the pelvic examination, Dr. Simmons found that S.S. had redness peri-urethral(around the urethra) as well as outside and under the labia. The doctor found a tear of the hymen and concluded that the tear was evidence of penetration. S.S. relayed the same story to the doctor and the police. The jury then watched a videotape of an interview of the girl. Under questioning, the child also testified that while taking baths she would sometimes touch herself.
The defendant testified that on the day of the incident, he was watching television and the children came into his room and watched along with him. While he was on the phone, the children fell asleep on the bed. He then noticed that S.S.'s hand was underneath her garment. As he got up, he snatched her hand from underneath her body. He then got up, went to the bathroom, and washed his hands. When he returned to the room, S.S. had gone to her own room. He testified that he never told S.S.'s mother because she would be embarrassed and because he was preoccupied with personal matters. On cross examination, he testified that he assumed S.S. was touching herself because he witnessed her younger sister touching herself at another time. He maintained that although he yanked or grabbed her hand, he never touched her vagina. He also testified that he had not relayed his version of the events to anyone prior to his trial. After his arrest he told the police only that he was playing with the children and it "got kind of rough."
Florida Rule of Criminal Procedure 3.510, provides:
Determination of Attempts and Lesser Included Offenses
On an indictment or information on which the defendant is to be tried for any offense the jury may convict the defendant of:
(a) an attempt to commit the offense if such attempt is an offense and is supported by the evidence. The judge shall not instruct the jury if there is no evidence to support the attempt and the only evidence proves a completed offense; or
(b) any offense that as a matter of law is a necessarily included offense or a lesser included offense of the offense charged in the indictment or information and is supported by the evidence. The judge shall not instruct on any lesser included offense as to which there is no evidence.
(Emphasis added.)
The court in Henry v. State, 445 So.2d 707 (Fla. 4th DCA 1984), affirmed an armed *1258 robbery conviction and held that the refusal of the trial court to give a defense-requested instruction on attempted robbery was not error because there was no evidence of an attempted robbery and the only evidence presented showed a completed offense of armed robbery. It observed:
Thus it appears the rule [Fla. R.Crim. P. 3.510(a) as amended] prohibits an attempt instruction on a criminal episode that has reached fruition.... We hold, therefore, that Rule 3.510 controls the question at hand and precludes instructions on attempts where the only evidence proves a completed offense.
Id. at 708.
Clearly, an instruction on attempt should not be given where there is no evidence of an attempt. Defendant totally denied committing any offense. The victim's testimony and the physical evidence showed digital penetration. The evidence established either a completed crime or no crime at all. Thus, because there was no evidence of attempted sexual battery, a jury instruction for attempt was unwarranted. Second, as our Supreme Court held in State v. Hightower, 509 So.2d 1078, 1079 (Fla.1987), the crime of lewd and lascivious conduct is not a necessarily included offense of the crime of sexual battery. Therefore the failure to instruct on this charge could not form the basis for the order granting new trial. We do however agree with the defendant that the order under review should be affirmed based on the trial court's additional conclusion that the jury's verdict was against the weight of the evidence. The unique power of the trial judge in making such a life altering determination is clearly established by Florida Rule of Criminal Procedure 3.600(a), which provides in part "[t]he court shall grant a new trial if any of the following grounds is established.... (2) The verdict is contrary to law or the weight of the evidence." As we recently observed in State v. Bodden, 756 So.2d 1111, 1113 (Fla. 3d DCA 2000):
The Florida Supreme Court has said that this rule "enables the trial judge to weigh the evidence and to determine the credibility of witnesses so as to act, in effect, as an additional juror." See Tibbs v. State, 397 So.2d 1120, 1123 n. 9 (Fla.1981). As we stated in Gonzalez v. State, 449 So.2d 882 (Fla. 3d DCA 1984):
Florida Rule of Criminal Procedure 3.600(a)(2) authorizes a trial judge to grant a new trial if it is established that `the verdict is contrary to ... the weight of the evidence.' The process of determining whether the verdict is consistent with the weight of the evidence necessarily requires the trial judge to invade the fact-finding arenato act, in effect, as an additional juror.

Id. at 888 (quoting Tibbs, 397 So.2d at 1123 n. 9).
Accordingly, finding no error in the judge's decision granting defendant a new trial based upon his conclusion that the verdict was contrary to the weight of the evidence, we affirm the order under review. At the same time, we point out that, on the evidence presented, the trial judge erred when he concluded that he had mistakenly failed to instruct on the other two charges sought.