SILBERMAN, Chief Judge.
Upon consideration of the Appellee’s motion for rehearing- filed December 21, 2011, it is
ORDERED that the Appellee’s motion for rehearing is granted, in part. This court’s opinion dated December 7, 2011, is withdrawn, and the attached opinion is issued in its place. The opinion has been edited to include a harmless error analysis, but the result is unchanged.
Heavy Patrell Shavers seeks review of his judgment and life sentence for first-degree murder and grand theft. Shavers was convicted based on evidence that, after a night of partying, he shot a drug-dealer acquaintance for the cash he was known to carry. We reverse and remand for a new trial based on a legal inconsistency in the jury’s verdict. While our reversal renders the remainder of Shavers’ issues moot, we write to discuss Shavers’ objection to the principals jury instruction.
Shavers was indicted for first-degree premeditated murder while discharging a firearm (count one) and first-degree robbery while discharging a firearm (count two). At trial, the evidence established that the crime took place at a house shared by teenagers Labronx Bailey, Brandon Siler, Tavaris McCoy, and the twenty-one-year-old victim, Michael Denhof. On the night before the murder, the roommates partied at the house with David Peterson, Shavers, and two teenage girls. Shavers talked about robbing the victim, a known drug dealer who carried a lot of cash. Shavers asked several of the partiers to help him, but no one agreed. In the early morning hours, McCoy and Bailey left in Bailey’s car to take the girls home, and Siler went upstairs to go to sleep. Thus, Shavers, Peterson, and the victim were alone on the first floor. Peterson testified that, while Peterson looked on in shock, Shavers robbed and shot the victim with a pistol.
The evidence was undisputed that, later in the morning, Shavers and Bailey went on a spending spree with the victim’s drug money. Shavers and Bailey rented two hotel rooms and continued to party. Shavers was arrested after Peterson was interviewed and had fingered Shavers as the sole robber and shooter. Shavers’ defense was that Bailey, one of Peterson’s childhood friends, was the person who robbed and shot the victim. In support of this defense, counsel for Shavers impeached Peterson’s account of events with prior inconsistent statements and witness testimony.
Even though felony murder was not charged in the indictment, the parties agreed to a first-degree murder instruc *1221 tion that included both premeditated and felony murder theories.[1] Over defense objection, the court also gave a principals instruction. The verdict form did not provide for separate findings for each theory but provided only for a general finding of guilty of first-degree murder. For purposes of the sentencing enhancement statute,[2] the verdict form provided options for the jury to indicate whether Shavers discharged a firearm and inflicted death, discharged a firearm, possessed but did not discharge a firearm, or did not possess a firearm during the offenses.
The jury found Shavers guilty “as charged” of first-degree murder on count one but found that he did not possess a firearm. On count two, the jury found Shavers guilty of the lesser-included offense of grand theft. After the jury verdict, Shavers made a motion for judgment of acquittal in which he argued that the jury’s finding that he did not possess a firearm in count one negated a finding of premeditated first-degree murder and the jury’s verdict for the lesser-included offense of grand theft in count two negated a finding of felony murder. Also, because the facts did not support his guilt as a principal to first-degree murder, Shavers argued that he was entitled to acquittal on count one.
Shavers’ argument is one of inconsistent verdicts. As the State points out, there are two types of inconsistent verdicts: factually inconsistent verdicts and legally inconsistent verdicts. See State v. Cappalo, 932 So.2d 331, 334 (Fla. 2d DCA 2006). Factually inconsistent verdicts are permissible in Florida. Such “[ijnconsis-tent verdicts are ordinarily considered to arise from a jury’s exercise of its ‘inherent authority to acquit’ even if the facts support a conviction.” Id. (quoting State v. Connelly, 748 So.2d 248, 253 (Fla.1999)). Thus, a jury’s verdicts finding a defendant guilty of aggravated fleeing and eluding and attempted assault charges are permissible even though they are factually inconsistent with its verdicts finding the defendant not guilty by reason of insanity on other charges arising from the same incident. Id. at 335. Similarly, a jury’s verdict finding a defendant guilty of introducing contraband onto the grounds of a detention facility is permissible even though the jury found the defendant not guilty of possession of the same contraband in count two. Connelly, 748 So.2d at 252-53.
The types of inconsistent verdicts that are impermissible are legally inconsistent verdicts, which arise when a not-guilty finding on one count negates an element on another count that is necessary for conviction. Cappalo, 932 So.2d at 334. “Inconsistent verdicts thus are impermissible “where an acquittal of the underlying felony effectively holds the defendant innocent of a greater offense involving that same felony.’ ” Id. (quoting Gonzalez v. State, 449 So.2d 882, 887 (Fla. 3d DCA 1984)). One example of legally inconsistent verdicts is when a jury finds a defendant guilty of possession of a firearm during the course of a felony but finds the defendant guilty only of a lesser-included misdemeanor instead of the underlying felony. Id. Another example is when the jury finds the defendant guilty of felony murder but also finds him guilty of a mis *1222 demeanor instead of the qualifying felony. Id. These types of cases “involve an offense that as a matter of law cannot be committed unless another underlying offense has also been committed. The commission of the underlying offense is a necessary element of the other offense.” Id.
The jury’s finding in this case that Shavers did not possess a firearm was factually inconsistent with a guilty verdict for premeditated first-degree murder based on the shooting of the victim with a firearm. However, the verdict was not legally inconsistent because the use of a firearm is not an element of premeditated murder. See § 782.04(1)(a)(1), Fla. Stat. (2007) (setting forth the elements of premeditated murder). Thus, it was not necessary for the jury to find that Shavers possessed a firearm in order for the jury to find Shavers guilty of premeditated murder. Cf. Gonzalez v. State, 440 So.2d 514, 516 (Fla. 4th DCA 1983) (holding that jury’s finding of not guilty of possession of a firearm during the commission of a felony was not legally inconsistent with its finding of guilt on the robbery with a firearm charge). If this factual inconsistency were the only error in the verdict, we would affirm.
However, in addition to the premeditated murder theory in count one, the State pursued a felony murder theory that was legally interlocking with the robbery charge in count two. The jury did not find Shavers guilty of robbery in count two but found him guilty of the lesser-included offense of grand theft. Under section 782.04(1)(a)(2), Florida Statutes (2007), robbery is a qualifying felony for the offense of felony murder but grand theft is not. Thus, to the extent the jury’s verdict is based on felony murder, the verdict finding Shavers guilty of grand theft in count two is legally inconsistent with its verdict finding Shavers guilty of first-degree murder “as charged” in count one. See Brown v. State, 959 So.2d 218, 221 (Fla.2007) (holding that a conviction on the lesser-included charge of petit theft was legally inconsistent with a conviction for first-degree felony murder). And generally, such legally inconsistent verdicts require reversal for vacation of the felony murder conviction. See id. at 220, 223.
This case is complicated by the fact that the first-degree murder charge was presented on both theories of premeditated murder and felony murder with a general verdict form. The State argues that because the charge of premeditated murder is not legally interlocking with the robbery charge in count two, the first-degree murder conviction must stand. The State also argues that any error in the verdict was harmless in light of what it characterizes as the “overwhelming” evidence supporting the alternate theory of premeditated murder.
It is constitutional error when a jury’s general guilty verdict could have been based on a legally inadequate theory. See Yates v. United States, 354 U.S. 298, 312, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), overruled on other grounds by Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); U.S. v. Spellissy, 438 Fed.Appx. 780, 782-83 (11th Cir.2011). However, this constitutional error is subject to harmless error review. See Skilling v. United States, — U.S. —, —, 130 S.Ct. 2896, 2934, 177 L.Ed.2d 619 (2010); Hedgpeth v. Pulido, 555 U.S. 57, 61, 129 S.Ct. 530, 172 L.Ed.2d 388 (2008); Spellissy, 438 Fed.Appx. at 783.
Under Florida’s harmless error test, the State bears the burden of establishing “beyond a reasonable doubt that the error did not contribute to the outcome.” Johnson v. State, 53 So.3d 1003, 1007 (Fla.2010) (citing State v. DiGuilio, *1223 491 So.2d 1129, 1139 (Fla.1986)). This standard has also been described as requiring the record to establish beyond a reasonable doubt that the jury would have reached the same verdict absent the error. Galindez v. State, 955 So.2d 517, 523 (Fla.2007); DiGuilio, 491 So.2d at 1138.
The State argues that, under Florida’s harmless error test, there was no reasonable possibility that the acquittal of Shavers on the robbery charge affected the jury’s murder verdict. The State suggests that the evidence in support of the first-degree murder charge was overwhelming, arguing that it “presented eye-witness testimony establishing that [Shavers] plotted to steal money from the victim, attempted to enlist the help of another, and in the course of the theft, shot and killed the victim.” In its initial brief, the State explained its view of the evidence against Shavers as follows:
Here, the premeditated murder is well supported by direct evidence of [Shavers’] repeated statements that he wanted the victim’s money and wanted to know if anyone would do the deed with him; of the eyewitness’ account that [Shavers] shot the victim once, looked calmly at the witness and back at the victim, then shot him a second time while he was down on the ground. [Shavers’] subsequent admission to Daniel Ryals that he had just “hit a lick” further strengthened the case that [Shavers] was both the mastermind and the shooter. Proof that [Shavers] had cash, supplied drugs to others and bought a car right after the murder supported the State’s theory that he killed the victim for his money. While [Shavers] advanced the theory that La-bronx Bailey could have been the shooter, the eyewitness testimony rendered by David Peterson stood undisputed.
While this description of the evidence could support the State’s interpretation of events, the jury clearly did not come to the same conclusion. The jury found Shavers guilty of murder, but it specifically found that Shavers did not possess a firearm. And the jury did not find Shavers guilty of first-degree robbery with a firearm but found Shavers guilty of the lesser-included offense of grand theft. These findings very strongly suggest that the jury believed that Shavers was at the scene and participated in the theft but another person possessed the firearm and did the actual robbing and shooting. Thus, it is reasonable to conclude that the jury relied on the legally inadequate felony murder theory to support the murder conviction.
Further, the jury’s findings were not excluded by the State’s evidence. There was no physical evidence proving that Shavers was the shooter or was even at the scene at the moment of the shooting. In fact, there was only one eyewitness to the shooting who testified, David Peterson. And while his version of the shooting was undisputed in that another witness did not contradict it, his testimony was impeached on several important points.
First, Peterson had a close relationship with Labróme Bailey that would have supported the jury’s apparent belief that he accused Shavers to protect Bailey. Peterson had been friends with Bailey since grade school, but he had only known Shavers a couple of months. And, while Peterson was the only witness who testified regarding Shavers’ earlier statements about robbing the victim, several other witnesses gave Bailey a motive by testifying that Bailey and the victim had a heated argument just before the shooting.
Second, there was some evidence to suggest that Peterson himself may have been involved in the shooting and robbery. Peterson testified that he had called McCoy, who was driving Bailey’s car, just after McCoy left but before the shooting, and he asked McCoy to return and pick him up. *1224 But Bailey and McCoy did not return to the house; instead they waited in Bailey’s car on a dirt road on the other side of the cul de sac. Additionally, although he allegedly was an innocent bystander, Peterson fled the victim’s home at the same time as the shooter and while carrying a shotgun, a fact he initially failed to mention to the police.
Third, Peterson’s testimony regarding the events that occurred right after the shooting was contradicted by other witnesses. According to Peterson, he and Shavers ran through the cul de sac and got into Bailey’s car. Moments later, Bailey decided to return to the scene. Bailey told McCoy, who was driving, to stop the car, and Bailey exited on foot with Shavers following. But a neighborhood witness testified that she saw the same two men who entered Bailey’s car get out of the car and run in the direction of the victim’s house. Additionally, Peterson testified that McCoy took Peterson home in Bailey’s car after Bailey and Shavers returned to the scene. But a witness named Christopher Knott, who had not been one of the partiers at the victim’s home, testified that he drove Peterson home in his car on the morning of the crime.
Moreover, the State’s argument addresses the sufficiency of the evidence, which is not a substitute for a proper harmless error evaluation. See Johnson, 53 So.3d at 1007. In our view, a particularly significant factor in determining the effect of the acquittal of Shavers as to robbery on the first-degree murder conviction is the verdict form itself which suggests that the jury convicted Shavers based on the legally inadequate theory of felony murder. Reviewing the record as a whole, we conclude that the State has not established beyond a reasonable doubt that the jury convicted Shavers in count one on the premeditated murder theory, as opposed to the felony murder theory.
Our reversal renders the remainder of Shavers’ arguments moot. However, we note that the principals instruction given over Shavers’ objection was not supported by the evidence. As we discussed previously, the State’s theory was that Shavers shot the victim in the course of a robbery while witness Peterson looked on. Although there was evidence that Shavers attempted to solicit others to aid and abet his robbing the victim, there was no evidence that anyone agreed to act in concert with Shavers to commit the robbery. Shavers’ defense was that Bailey shot the victim while Peterson looked on. However, there was no evidence that, even if Bailey did shoot the victim, Shavers aided or abetted him. Accordingly, the evidence did not support the principals instruction. Cf. Lovette v. State, 654 So.2d 604, 606 (Fla. 2d DCA 1995) (holding that trial court erred in giving a principals instruction “because there was no evidence that Mr. Lovette acted in concert with anyone in committing the theft or the burglary” and “[t]he only evidence of any concerted effort would have been with respect to dealing in stolen property” after the crimes occurred); McGriff v. State, 12 So.3d 894, 895 (Fla. 1st DCA 2009) (holding that principals instruction was improper where “there was no evidence offered that Appellant worked in conjunction with anyone else to commit the crimes” even though the testimony established that he was standing in a group when the shooting occurred).
Reversed and remanded.
CASANUEVA, J., and DAKAN, STEPHEN L., Associate Senior Judge, Concur.

. The State is permitted to proceed on a felony murder theory when an indictment charges first-degree premeditated murder despite the lack of notice. See Hannon v. State, 941 So.2d 1109, 1148-49 (Fla.2006); Anderson v. State, 841 So.2d 390, 404 (Fla.2003); Knight v. State, 338 So.2d 201, 204 (Fla. 1976).

. See § 775.087(2), Fla. Stat. (2007).