ALTENBERND, Judge.
Mr. Sims appeals his judgment and sentence for manslaughter with a firearm. Unfortunately, during his trial Mr. Sims was excluded from an in-chambers conference at which the trial judge and the assistant state attorney addressed their concerns that Mr. Sims’ attorney was impaired and unable adequately to represent Mr. Sims. Although we fully understand why the trial judge elected to hold this conference in private, Mr. Sims had a constitutional right to be present at this crucial stage of the proceeding. In this case, the closer question is whether this error requires a new trial. We conclude that it does and, accordingly, reverse the judgment and sentence and remand for a new trial.
The death resulting in these charges occurred in 1981. Mr. Sims avoided arrest for nearly thirty years. Thus, this case was not tried until 2011. In 1981, Mr. Sims frequented a “bikini bar” in Lee County. He was good friends with one of the female employees of the bar. Prior to the incident in question, this woman told Mr. Sims that she had been raped by a man named Roy Radabaugh.
On January 18, 1981, Mr. Sims learned that Mr. Radabaugh was in the bar’s parking lot. Mr. Sims exited the bar and approached Mr. Radabaugh, who was sitting in the driver’s seat of a parked car. Mr. Sims pointed a .38 caliber firearm at Mr. Radabaugh’s head and the gun discharged, killing Mr. Radabaugh. Mr. Sims’ theory of defense was that Mr. Ra-dabaugh reached out his hand and pulled the trigger to commit suicide.[1]
The State charged Mr. Sims with second-degree murder. The jury rejected Mr. Sims’ suicide theory but convicted him of the lesser offense of manslaughter. The trial court sentenced him to seventeen years’ imprisonment.
On appeal, Mr. Sims raises four issues. We conclude that he is entitled to a new trial for the reasons discussed and, thus, we have no need to resolve the remaining issues.
Following lunch on the second day of trial, the court interrupted proceedings to conduct an in-chambers conference. The conference was recorded by the court reporter but attended only by the judge, the assistant state attorney, and Mr. Sims’ *1100 counsel. The conference took place immediately after defense counsel had cross-examined a State witness. At the conference, the assistant state attorney disclosed that people in the courtroom were concerned that defense counsel was not functioning at her full capacity and that her speech and comprehension seemed abnormal. The court was similarly concerned with defense counsel’s mental status and inquired specifically as to whether she had been consuming alcohol. Defense counsel denied any allegations of alcohol consumption but instead stated that she had had a “knock-down drag-out” with another judge and that she “ha[d] a cold,” for which she was taking only vitamins and aspirin.
The trial judge acknowledged that he was aware that Mr. Sims’ counsel had had an incident with another judge. But he also explained that another person had questioned whether defense counsel had something to drink before she came to court on the first day of trial. The trial judge summarized the preceding day of trial by stating: “I found jury selection to be a rather bizarre experience, but I think we got through jury selection all right.”
Although defense counsel maintained that she was not impaired, when the judge asked if she was ready to proceed, she replied:
No, Judge. Just declare a mistrial. I don’t think — I mean — I think it’s my fault and jeopardy hasn’t attached.[2]
[[Image here]]
I got to live in this town, you know? And if you don’t think it will take five minutes for this to get all over this courthouse—
Rather than grant a mistrial as requested by defense counsel, the trial court adjourned proceedings for the day and allowed defense counsel to continue the following morning. At least from our record, counsel appears to have been competent during the remainder of the trial. As earlier explained, counsel did -convince the jury to return a verdict for a lesser offense. Mr. Sims appeals that judgment and sentence.
I. Mr. Sims’ Right to Attend the In-Chambers Conference
On appeal, Mr. Sims argues that he had a constitutional right to be present during this conference. We agree. The United States Supreme Court has held that in a criminal trial, the Confrontation Clause of the Sixth Amendment offers the accused the right to be present at all stages of the proceedings where fundamental fairness might be thwarted by his absence. See U.S. Const, amend. VI; Faretta v. California, 422 U.S. 806, 816, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (citing Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934)). A defendant has a right to be present at such stages where his absence might frustrate the fairness of the proceedings. Faretta, 422 U.S. at 819 n. 15, 95 S.Ct. at 2525. Florida has since adopted a comparable standard. See Garcia v. State, 492 So.2d 360, 363-64 (Fla.1986) (holding that a defendant has a constitutional right to presence at all crucial[3] stages of the trial where *1101 his absence might frustrate the fairness of the proceeding and that it is a constitutional question of whether fundamental fairness has been thwarted which determines whether the error is reversible).[4] Yet, this right does not confer upon a defendant an absolute right to be present at every conference. For instance, a defendant is not entitled to attend bench conferences that involve purely legal matters or those in which a defendant’s presence would be of no assistance to counsel. See Rutherford v. Moore, 774 So.2d 6S7, 647 (Fla.2000); Hardwick v. Dugger, 648 So.2d 100, 105 (Fla.1994).
In this case, the trial judge and the attorneys were not discussing purely legal issues at the in-chambers conference. Rather, they were trying to determine whether Mr. Sims’ attorney was competent to proceed and, if not, why she was impaired. They were addressing a factual issue relating to Mr. Sims’ right to have competent counsel at this trial. We conclude that such a hearing is a crucial or critical stage of the proceeding. Nothing in this record suggests that Mr. Sims was even aware of the subject of this conference, much less that he knowingly waived his right to attend.[5]
II. This Error Entitles Mr. Sims to a New Trial
Having concluded that the trial court erred by excluding Mr. Sims from the in-chambers conference, we turn to whether this error warrants a new trial. We have struggled with this issue, in part, because Mr. Sims was convicted of a lesser-included offense. All in all, it might seem that he received a reasonably favorable outcome. On the other hand, Mr. Sims is almost seventy years of age, and the seventeen-year term of imprisonment that he is serving is probably longer than his life expectancy.
It is well established that a violation of the right to be present at a crucial stage of a criminal proceeding is not a per se error; it is subject to a harmless error analysis. See Garcia, 492 So.2d at 364; Turner v. State, 580 So.2d 45, 49-50 (Fla.1987). The case law tends to rely on the test used to determine the right to be present, i.e., “at all crucial stages of his trial where his absence might frustrate the airness of the proceedings,” see Garcia, 492 So.2d at 363, and affirmatively inquires into whether it appears that the absence of the defendant actually did frustrate the fairness of the proceeding, see, e.g., Turner, 530 So.2d at 50; Williams v. State, 785 So.2d 652, 653 (Fla. 2d DCA 2001). At least in cases where this issue is raised on direct appeal, the burden is typically placed on the State to show beyond a reasonable doubt that the defendant’s absence was not prejudicial. See Garcia, 492 So.2d at 364; Roberts v. State, 510 So.2d 885, 890-91 (Fla.1987).
It is useful to consider that this analysis is somewhat unique. This is not a situa *1102 tion where our concepts of “preserved” or “fundamental” error serve the courts well. In most cases, the error is not preserved in the trial court. If one of the lawyers or the judge realizes that there is an issue as to whether the defendant needs to be present, this issue is almost always well handled by the trial court.
Even if this error is unpreserved, the notion that it should be treated as a fundamental error, with the burden shifted to the defendant to prove the error was harmful, is questionable. See Heed v. State, 837 So.2d 366, 369-70 (Fla.2002). Fundamental error assumes that the defendant had the opportunity to object and did not. See Ray v. State, 403 So.2d 956, 960 (Fla.1981). This is typically not the case when the defendant has been excluded from a crucial stage of the proceedings.
The harm that Mr. Sims established was the deprivation of his Sixth Amendment Right to presence. This type of error, which directly impacts a basic constitutional right, is sometimes referred to as a “constitutional error.” See Goodwin v. State, 751 So.2d 537, 543 (Fla.1999). Such a constitutional error is not per se reversible. See Chapman v. California, 386 U.S. 18, 21-22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (rejecting the notion that all constitutional errors are harmful errors). For this type of error, Florida has placed the burden of persuasion on the State to convince the appellate court that the error is harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129, 1134-35 (Fla.1986).
We are convinced that in many instances a defendant’s absence from an in-chambers conference attended by the court reporter could be shown to be harmless beyond a reasonable doubt. For instance, had the attorneys and trial judge been discussing mere technical, procedural, or legal issues that would not have been assisted by Mr. Sims’ presence, any error in his exclusion from such a conference would be deemed harmless. See, e.g., Coney v. State, 653 So.2d 1009, 1012 (Fla.1995). In this case, however, the conference addressed the competence of Mr. Sims’ counsel under circumstances where neither the trial court nor the assistant state attorney was convinced that defense counsel was capable of representing the defendant at that moment in time.
In evaluating whether Mr. Sims’ is entitled to a new trial, we observe that the record does not demonstrate whether Mr. Sims was even aware of this issue of competency. Although Mr. Sims was obviously not consulted as to his attorney’s motion for mistrial, if he had been aware that people, including the trial judge, thought his attorney was acting strangely and that jury selection had been a “rather bizarre experience,” it is reasonable to assume that he would have been concerned whether he needed to move for a mistrial.
If Mr. Sims had been present at this conference, it seems obvious to this court that the experienced trial judge would have realized that Mr. Sims needed and was entitled to independent counsel who could provide him with competent legal advice as to what steps he should take at the hearing — given that his counsel was not competent to proceed at that moment. In light of the evaluation of defense counsel’s performance by the trial court itself, it is hard to imagine that independent counsel would have advised Mr. Sims not to move for a mistrial. If such a motion had been made, on the face of this record we are convinced that Mr. Sims would have been entitled to a mistrial. Accordingly, we conclude that Mr. Sims’ absence actually did frustrate the fairness of the proceeding, and we must reverse this judg *1103 ment and sentence and remand the case for a new trial.
Reversed and remanded.
CASANUEVA and KHOUZAM, JJ, Concur.

. A poem was found on Mr. Radabaugh’s person, which Mr. Sims argued was a suicide note. The note — which was undated and did not directly mention suicide — was excluded by the trial court.

. We note that jeopardy had in fact attached when Mr. Sims’ jury was impaneled and sworn. See Thomason v. State, 620 So.2d 1234, 1236 (Fla.1993). However, counsel would have been correct that a mistrial would not have prevented a retrial in this case because the error that may have warranted a mistrial was not attributable to prosecutorial misconduct or judicial overreaching. See State v. McNeil, 362 So.2d 93, 95 (Fla. 1st DCA 1978).

. The extensive case law addressing this issue sometimes refers to a ‘‘crucial” stage, as in Garcia, and other times to a "critical” stage, see, e.g., Dunbar v. State, 89 So.3d 901, 907 (Fla.2012). These terms in ordinary usage seem to have different meanings, but they apparently are equivalent terms in this con *1101 text, as they have even been used interchangeably in a single opinion. See Johnson v. State, 750 So.2d 22, 27-28 (Fla.1999); but see Ibar v. State, 938 So.2d 451, 469 (Fla.2006) (suggesting that, in the context of the related right to the presence of counsel, "crucial” refers to the test under the state constitution, while "critical” applies to the federal one).

. Florida Rule of Criminal Procedure 3.180(a) also sets forth an enumerated list of instances in which a defendant has a right to presence.

. A defendant may waive his right to be present at a crucial stage of trial and exercise constructive presence through counsel, but such a waiver must be offered knowingly, intelligently, and voluntarily. See Coney v. State, 653 So.2d 1009, 1013 (Fla.1995); Papageorge v. State, 710 So.2d 53, 54-55 (Fla. 4th DCA 1998).