NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

KENNETH ALTON PROCTOR,            )
                                  )
                Appellant,        )
                                  )
v.                                )        Case No. 2D14-3118
                                  )
STATE OF FLORIDA,                 )
                                  )
                Appellee.         )
_____ )

Opinion filed September 21, 2016.

Appeal from the Circuit Court for
Hillsborough County; Samantha L. Ward,
Judge.

Howard L. Dimmig, II, Public Defender, and
Allyn M. Giambalvo, Assistant Public
Defender, Bartow, for Appellant.

Kenneth Alton Proctor, pro se.

Pamela Jo Bondi, Attorney General,
Tallahassee, for Appellee.


MORRIS, Judge.

          Kenneth Proctor appeals five convictions and sentences entered after a

jury trial.  We affirm four convictions and sentences, but we reverse Proctor's conviction

for aggravated assault with a deadly weapon and remand for the trial court to enter

judgment for the lesser included offense of assault on a person over sixty-five and to resentence Proctor accordingly.[1]

### I. Facts

The State charged Proctor with the following offenses: (1) aggravated battery with a deadly weapon on a person over sixty-five, with possession of a firearm, committed against Proctor's father; (2) aggravated assault with a deadly weapon on a person over sixty-five, with possession of a firearm, also committed against his father; (3) aggravated assault with a deadly weapon, with discharge of a firearm, committed against Proctor's girlfriend; (4) grand theft of a firearm; and (5) grand theft of a motor vehicle.

At trial, the father testified that his small dog woke him up in the middle of the night. He walked out of his bedroom and spoke to his son, who told him everything was okay. The father went back to bed but was woken up again. When the father walked into his living room, he saw his son and his son's girlfriend. Proctor was holding the father's pistol in his hand, and Proctor hit his father in the face with the pistol. Proctor told the father to sit down, threatening to hurt him. The father next observed the girlfriend on her knees and Proctor holding the girlfriend by the hair, pouring vodka on her. The father tried to leave, but Proctor hit the father a few more times, knocking him to the ground at least twice. The father was ultimately able to run out of the house and across the street. He then observed his truck speeding away, even though Proctor no longer had permission to drive his father's truck. The father's truck was later found on

---

[1]Counsel for Proctor filed an initial brief pursuant to Anders v. California, 386 U.S. 738 (1967). This court ordered supplemental briefing pursuant to Penson v. Ohio, 488 U.S. 75 (1988), and In re Anders Briefs, 581 So. 2d 149 (Fla. 1991), on the issues addressed in this opinion.

the side of the road.  The State introduced into evidence photographs of the father's injuries.

The girlfriend testified that she was hanging out with Proctor in his bedroom having a good time.  At one point, Proctor walked out, and when he walked back in a few minutes later, he was acting differently.  He was mad and told her that he was done.  He slapped her and put a gun to her head, saying he should just kill her.  She was afraid that he was going to hurt her, and she begged him not to.  He then went into the kitchen and had words with his father.  When Proctor returned, he pushed her head down onto a pillow and put the gun to her head, causing her jaw to pop.  They struggled, and when he pulled the gun away, it fired.  He then dragged her by her hair into the kitchen and poured vodka on her head.  She heard Proctor arguing with his father, but she was focused on figuring out how to get of the house.  Proctor dragged her by the arm outside to his father's truck.  He was calmer at that point, so she went with him.  As they were driving, Proctor said he should kill both of them.  He headed towards an oncoming semi-truck, and they hit a culvert on the side of the road and ended up in a ditch.  She grabbed the gun and exited the truck.  She ran down the road, and Proctor caught up to her.  She tossed the gun into some bushes.  They walked to a friend's house where they talked.  Proctor did not remember what happened, and when she told him, he started crying.  They ultimately fell asleep.  When the girlfriend woke up, she called her sister who took her to the hospital.  The State introduced photographs of the girlfriend's injuries.

The State also presented the testimony of the investigating officers regarding their observations of the victims' injuries and demeanors, the condition of the father's house, and the location and condition of the truck.

The jury found Proctor guilty as charged with the exception of count one. Specifically, the jury found Proctor guilty of (1) battery on a person over sixty-five (the lesser included charge in count one); (2) aggravated assault with a deadly weapon on a person over sixty-five, with the jury finding that Proctor did not actually possess a firearm; (3) aggravated assault with a deadly weapon, with the jury finding that Proctor actually possessed and discharged a firearm; (4) grand theft of a firearm; and (5) grand theft of a motor vehicle.

Proctor was sentenced to concurrent sentences on all five counts. On counts one, four, and five, he was sentenced to five years in prison. On count two (the aggravated assault against his father), Proctor was sentenced to fifteen years with a three-year minimum mandatory term. On count three (the aggravated assault against his girlfriend), Proctor was sentenced to a twenty-year minimum mandatory term.

**II. Analysis**

The jury found that Proctor committed aggravated assault with a deadly weapon against his father, but the jury also found, under that same count, that Proctor did not actually possess a firearm. Proctor argues that the jury verdict on this count is a true inconsistent verdict because the jury found him guilty of aggravated assault with a deadly weapon but then found that he did not possess a firearm. He argues that the only weapon alleged to have been used in the offense was a firearm and that the jury's

finding that he did not possess a firearm negates its finding that he committed aggravated assault with a deadly weapon.

In Gerald v. State, 132 So. 3d 891, 893-94 (Fla. 1st DCA 2014), the appellant was convicted of aggravated assault under section 784.021, Florida Statutes, and it was clear from the evidence that the aggravated assault was based on the appellant's use of a deadly weapon, i.e., a gun. Yet, the jury specifically found on the verdict form that the appellant "did not actually possess a firearm during the aggravated assault." 132 So. 3d at 892. The court held that the jury reached true inconsistent verdicts, which are not permitted in Florida. See id. at 893-94 (recognizing that true inconsistent verdicts are the one exception to the rule allowing inconsistent verdicts); see also Brown v. State, 959 So. 2d 218, 220 (Fla. 2007) (recognizing that "the 'true' inconsistent verdict exception[] comes into play when verdicts against one defendant on legally interlocking charges are truly inconsistent" and that "true inconsistent verdicts are 'those in which an acquittal on one count negates a necessary element for conviction on another count' " (quoting State v. Powell, 674 So. 2d 731, 732-33 (Fla. 1996))); Shavers v. State, 86 So. 3d 1218, 1221 (Fla. 2d DCA 2012) (explaining the difference between factually inconsistent verdicts, which are permitted in Florida, and legally inconsistent verdicts, which are not permitted in Florida). The court in Gerald explained:

> [A]ggravated assault can only be established if an assault was committed with a deadly weapon or with an intent to commit a felony. It is undisputed that, in this case, the only evidence of a deadly weapon presented at trial was the firearm. As such, the firearm is the only basis on which the deadly weapon element could be established. Thus, it is impossible to reconcile how the jury could find that [a]ppellant committed aggravated assault with a deadly

weapon, but also specifically find beyond a reasonable doubt that [a]ppellant did not possess the firearm during the commission of the assault.

Moreover, the jury could not have independently concluded that [a]ppellant committed the aggravated assault with an intent to commit a felony. The trial court did not instruct the jury on aggravated assault with an intent to commit a felony, pursuant to section 784.021(1)(b), nor could the evidence here have supported such an instruction. Instead, the jury was only instructed on aggravated assault with a deadly weapon. As such, we are left with the jury's finding, beyond a reasonable doubt, that [a]ppellant did not actually possess the firearm during the aggravated assault, which negates the critical element that elevates simple assault to aggravated assault.

Gerald, 132 So. 3d at 894; cf. State v. Carswell, 914 So. 2d 9, 12 (Fla. 4th DCA 2005) (holding that conviction for aggravated battery was not negated by finding that defendant did not possess firearm because the jury could have found aggravated battery on the alternative theory of "great bodily harm"). The Gerald court reversed and remanded for the trial court to reduce the appellant's conviction to simple assault and for resentencing. 132 So. 3d at 896.

In this case, it is clear from the State's evidence and argument during trial that the only deadly weapon alleged to have been used by Proctor during this offense was his father's firearm. And the jury could not have found that Proctor committed the assault with intent to commit a felony because the jury was not instructed on that type of aggravated assault. According to Gerald, Proctor's conviction on count two was improper because the inconsistent findings on count two result in true inconsistent verdicts. In this case, the firearm finding is legally interlocked with the charge of aggravated assault with a deadly weapon because the finding of the firearm was necessary to support the conviction for aggravated assault. In other words, under the

facts of this case, the firearm was a necessary element of the aggravated assault. Cf. Shavers, 86 So. 3d at 1222 (holding that jury's finding that defendant did not possess a firearm was not legally inconsistent with jury's finding of guilt for first-degree murder "because the use of a firearm was not an element of" the charged murder). Thus, when the jury found that Proctor did not possess a firearm, it negated its finding that he was guilty of aggravated assault with a deadly weapon.

We recognize that in a subsequent decision, the First District in State v. McGhee, 174 So. 3d 470 (Fla. 1st DCA 2015), distinguished Gerald for two reasons. First, McGhee held that the jury's verdict of aggravated assault was not inconsistent with the jury's verdict that appellant did not possess a firearm because there was a dispute as to the nature of the deadly weapon used, i.e., whether it was actually a firearm or something black resembling a firearm. Id. at 472. This distinction does not apply here because there was no dispute that the weapon used was Proctor's father's pistol.

The McGhee court also distinguished Gerald on the basis that the jury in Gerald was not given the option of the lesser included offense of simple assault, whereas the jury in McGhee was instructed on simple assault and did not choose that option. McGhee, 174 So. 3d at 472. Here, like in McGhee, the jury was given the option of simple assault and did not choose that option. Instead, the jury chose aggravated assault with a deadly weapon. The fact that the jury did not choose simple assault in this case could support a conclusion that the jury was not mistaken in its verdict on aggravated assault but simply chose to pardon Proctor on the firearm issue.

However, on count one, the jury found Proctor guilty of the lesser included offense of battery on person over sixty-five even though the jury was given the option of finding that Proctor committed aggravated battery with a deadly weapon on a person over sixty-five and the State offered evidence that Proctor had hit his father with the gun. See State v. Williams, 10 So. 3d 1172, 1174 (Fla. 3d DCA 2009) (citing cases for the proposition that a firearm can be a deadly weapon for purposes of aggravated battery when it is used as a club, stick, or bludgeon). Thus, the jury rejected the evidence that Proctor hit his father with a gun, further indicating that the jury did not believe that Proctor used a gun in the offenses against his father and that the jury did not intend to find that Proctor used a deadly weapon in the assault in count two. Thus, this case is distinguishable from McGhee because we cannot say with confidence that the jury knowingly rejected the lesser included offense of simple assault but simply pardoned Proctor on the firearm finding necessary for the charged offense.

The State argues that the jury may have pardoned Proctor because it found that the firearm he possessed was not loaded. It is true that based on the evidence presented by the State, an unloaded firearm would have supported a finding of a deadly weapon for purposes of aggravated assault with a deadly weapon. See Williams, 10 So. 3d at 1174 (recognizing that "[i]f the firearm is . . . used to put the victim in fear to commit an aggravated assault or a robbery, it is a deadly weapon as a matter of law[,] . . . regardless of whether the firearm is loaded or capable of being fired" and holding that firearm was a deadly weapon for purposes of aggravated battery where defendant used it to strike the victim in the head). But this does not explain the inconsistent findings because the unloaded gun would have also supported a finding

that Proctor possessed a firearm. See Bentley v. State, 501 So. 2d 600, 602 (Fla. 1987) ("[T]he state need only have proved that the weapon in Mrs. Bentley's possession was designed to or could be readily converted to expel a projectile [in order to support a minimum mandatory for possession of a firearm]. . . . Whether the gun in her possession was loaded or whether she had available ammunition is irrelevant." (citations omitted)). Therefore, a finding that Proctor did not possess a firearm because the gun was unloaded is inconsistent with a finding that that same unloaded firearm was a deadly weapon.

Having concluded that the jury arrived at legally inconsistent verdicts, we must determine whether the error is fundamental. In Gerald, the issue was preserved by a motion for new trial, 132 So. 3d at 892, whereas Proctor did not raise this issue below. Proctor argues that because the jury's specific finding that Proctor did not possess a firearm negates the required element for the charged offense of aggravated assault, the jury must have concluded that Proctor was guilty under some other uncharged or uninstructed theory of guilt and that the error is therefore fundamental.

We agree that the error is fundamental; it goes to the foundation of Proctor's conviction for aggravated assault. See Jaimes v. State, 51 So. 3d 445, 448 (Fla. 2010) ("[A] fundamental error is one that 'goes to the foundation of the case or goes to the merits of the cause of action.' " (quoting Sanford v. Rubin, 237 So. 2d 134, 137 (Fla. 1970))). Because the jury found that Proctor did not possess a firearm during the assault, thus negating the deadly weapon element of aggravated assault, the jury convicted Proctor under a theory of aggravated assault that was not charged in the information, thereby resulting in fundamental error. See id. at 448-49 (recognizing that

- 9 -

"[i]t is a fundamental principle of due process that a defendant may not be convicted of a crime that has not been charged by the state" and holding that defendant's conviction for aggravated battery with great bodily harm violated his right to due process because that theory of aggravated battery was not charged in the information). True inconsistent verdicts are not permitted in Florida based on "the possibility of a wrongful conviction," Powell, 674 So. 2d at 733, and the possibility of such a wrongful conviction outweighs the possibility of a jury pardon. The jury was given a special interrogatory on the verdict form to answer the question of whether Proctor possessed a firearm in count two. The jury chose the option that Proctor did not possess a firearm. In light of the specific finding that Proctor did not possess a firearm, we cannot say with confidence that the jury meant to find Proctor guilty of aggravated assault under the deadly weapon theory. The possibility of the jury wrongfully convicting Proctor of aggravated assault outweighs the possibility that the jury was simply pardoning Proctor on the firearm finding.[2]

### III. Conclusion

We reverse Proctor's conviction for aggravated assault with a deadly weapon on a person over sixty-five and remand for the trial court to enter a judgment on

---

[2]The State also argues that an irregular verdict must be objected to below in order for the issue to be preserved for appeal. See Fla. R. Crim. P. 3.570 ("No irregularity in the rendition or reception of a verdict may be raised unless it is raised before the jury is discharged. No irregularity in the recording of a verdict shall affect its validity unless the defendant was in fact prejudiced by the irregularity."); James v. State, 150 So. 3d 864, 866 (Fla. 4th DCA 2014) (holding that verdict form on which word "firearm" was crossed out and initialed, resulting in convictions for lesser included offenses that were not requested, was an irregular verdict that must be raised while the jury is still in court), review denied, 192 So. 3d 38 (Fla. 2015)). But the verdict in this case is not merely irregular.

the lesser included offense of assault on a person over sixty-five and to resentence Proctor accordingly.

Affirmed in part; reversed in part; remanded.


SILBERMAN and BLACK, JJ., Concur.