DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MELISSA DELACRUZ,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-2103

[July 3, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John S. Kastrenakes, Judge; L.T. Case No. 50-2015-CF-007496-AXXX-MB.

Carey Haughwout, Public Defender, and Paul Edward Petillo, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jessenia J. Concepcion, Assistant Attorney General, West Palm Beach, for appellee.

KLINGENSMITH, J.

The state charged appellant Melissa Delacruz with crimes arising from the theft of large sums of money from her employer. During her jury trial, and without warning, appellant's attorney informed the trial court he could no longer continue representation because he had been informed of the possibility that his fee was paid with funds appellant allegedly stole from a subsequent employer. Defense counsel requested leave to withdraw from his representation of appellant, but the trial court denied the motion. We hold that the denial of the motion was error and reverse.

Appellant was charged with several counts of grand theft; the state alleged that she used her employer's business credit card and business account funds for unauthorized personal expenses. During trial, defense counsel requested an *ex parte* hearing and asked to have the courtroom cleared. The trial court declined to clear the courtroom and instead offered to use the built-in "white noise machine," which blocks the ability for any persons other than those at the bench to hear the conversation, although the microphones at the bench record any such conversations. The trial court assured defense counsel "nobody can hear you except me." Thereafter, the trial court held multiple *ex parte*

conferences at sidebar utilizing the white noise machine. Video footage of the trial provided in the supplemental record shows appellant was not present at the bench during these discussions. In the privacy of the sidebar conference, defense counsel explained that an attorney representing appellant's current employer called defense counsel's office, threatening to sue and file a bar complaint against him if he did not "wire the entire amount of funds" he received from appellant because she allegedly stole those funds from that employer.

Defense counsel asserted that he could not advocate as zealously for appellant as he would in any other situation. In support of this assertion, defense counsel stated he felt "victimized" by appellant, who put him in a situation where he was at risk of "being sued by the very actions of the person that I'm sentinel to defend." He disclosed that his ability to advocate for appellant was compromised because he had to argue to the jury that appellant did not do the things she was accused of when he knew in fact she had. He said the situation was "affecting [him] materially . . . not a financial materiality but the human effects." Due to this predicament, counsel filed a written motion to withdraw from the case and informed the trial court that he and his client had irreconcilable differences, that a conflict existed under the Florida Bar rules, and that the Florida Bar ethics counsel had confirmed to him that a conflict existed. Defense counsel also informed the court he had retained counsel to represent him regarding the demand he had received for return of the funds.

The trial court noted that the motion was based on allegations for which appellant was presumed innocent, and acknowledged defense counsel was representing appellant in a professional and effective manner, found that discharge was not warranted, and denied the motion to withdraw. In reaching this conclusion, the trial court compared the present case to that of an attorney continuing legal representation after a client fails to honor a fee agreement:

> [T]he court has come to the conclusion that [what] this is really about here is money. And I can't tell you how many times attorneys have been promised to be paid and have failed to have gotten paid and the court would deny a motion to withdraw.
>
> In this case, you were promised to be paid with valid money, and maybe it has turned out that you were paid with invalid money. And I don't know what's going to happen down the road with respect to the money that you have earned in this case. . . . But my firm belief without giving you legal advice is that's your money as long as you knew and had no reason to believe that it was fraudulently earned. But in any event, even if worst-case scenario you were forced to relinquish the money, what we basically have here is a case in which you are performing services for [Ms.] Delacruz pro bono.

2

The trial court also explained that it might have granted defense counsel's motion to withdraw if it had been filed two months before trial began but noted that the motion was filed during the middle of trial. After resuming open court, the trial court—in an attempt to ensure appellant's right to competent counsel—addressed appellant:

> THE COURT: Ma'am, you know, lost in all of this hullabaloo yesterday and today about what's going on [in an unrelated matter involving appellant], and I'm not going to ask you any questions about that. I just want to make sure that you're happy with [defense counsel's] performance in representing you in this matter. Are you?
>
> APPELLANT: Absolutely. Yes, sir.

At the end of the state's case, the trial court again asked appellant whether she understood "that [defense counsel] was a little concerned about his ability to advocate for you, right?" Appellant responded affirmatively. No further on-the-record discussions took place until appellant appeared for sentencing following conviction. At that time, defense counsel renewed his motion to withdraw and explained that his previous motion was never based on the possibility of not getting paid but rather was based on his own victimization by appellant. Defense counsel said that at trial he felt compelled to "make arguments that in my mind as I was arguing them I believed to be not accurate." Despite these arguments, the trial court again denied the motion. Appellant was adjudicated guilty and sentenced to twenty years' imprisonment on one count, fifteen years' imprisonment on another, and five years' imprisonment on a third, with all sentences to run concurrently. This appeal follows.

"The decision of a trial court to deny a motion to withdraw will not be disturbed absent a clear abuse of discretion." *Sanborn v. State*, 474 So. 2d 309, 314 (Fla. 3d DCA 1985).

That said, "[a] criminal defendant's Sixth Amendment right to effective assistance of counsel encompasses the right to counsel free of ethical conflicts." *Toneatti v. State*, 805 So. 2d 112, 114 (Fla. 4th DCA 2002). "An actual conflict of interest can impair the performance of a lawyer and ultimately result in a finding that the defendant did not receive the effective assistance of counsel." *Rutledge v. State*, 150 So. 3d 830, 835 (quoting *Lee v. State*, 690 So. 2d 664, 667 (Fla. 1st DCA 1997)). Courts have held that "[a] defense attorney 'is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of trial.'" *G.B. v. State*, 576 So. 2d 889, 890 (Fla. 1st DCA 1999) (quoting *Holloway v. Arkansas*, 435 U.S. 475, 485 (1978)).

Rule 4-1.7(a)(2) of the Rules Regulating the Florida Bar provides that "a lawyer must not represent a client if . . . there is a substantial risk that the representation of 1 or more clients will be materially limited . . . by a personal interest of the lawyer." There is an exception if "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client," and the client gives informed consent in writing or stated clearly on the record at a hearing. *See* R. Regulating Fla. Bar 4-1.7(b). The comment to the rule elaborates on conflicts of interest:

> Loyalty and independent judgment are essential elements in the lawyer's relationship to a client. Conflicts of interest can arise from the lawyer's responsibilities to another client, a former client or a third person, or from the lawyer's own interests. . . .
>
> An impermissible conflict of interest may exist before representation is undertaken. . . . If such a conflict arises after representation has been undertaken, the lawyer should withdraw from the representation. . . .
>
> . . . .
>
> Loyalty to a client is also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. . . . A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

Comment to R. Regulating Fla. Bar 4-1.7 (Loyalty to a client).

Although we have found no case directly on point, we are persuaded by the analysis in *Williams v. State*, 622 So. 2d 490 (Fla. 4th DCA 1993). In *Williams*, we decided that a public defender should have been allowed to withdraw where the state called the public defender's investigator as a witness, which compromised the public defender's ability to effectively cross-examine him. *Id.* at 491-92. To decide the case, we relied on rule 4-1.7 and its comments; specifically, the rule referencing a lawyer's responsibilities to a third person and the above-quoted portion of the comment that a lawyer's ability to carry out their duties may be impaired by other responsibilities or interests. *Id.* at 491. We agreed with the public defender that withdrawal was required where he believed that he could not adequately represent his client due to other loyalties (i.e., loyalty to his investigator). *Id.* In so holding, we noted "[a] public defender

should be permitted to withdraw where the public defender determines that the client's interests are so adverse or hostile that they cannot be represented without conflict of interest." *Id.* (citing *Babb v. Edwards,* 412 So. 2d 859 (Fla. 1982)).

> We reject the state's argument that the trial court correctly denied the motion because [the investigator] *and appellant's* interests were neither conflicting nor adverse, therefore there was no actual conflict. The public defender's argument was that his *own* interests, not those of [the investigator], were adverse to appellant's interests in that he believed it was in his best interest not to destroy the working relationship he had with his investigator by subjecting him to harsh cross-examination. . . .
>
> Based on appellant's counsel's perceived conflict between his own interests and appellant's interests, we conclude that the trial court reversibly erred in denying appellant's trial counsel's motion to withdraw.

*Id.* at 492 (alteration added).

The state avers that defense counsel did a laudable job representing appellant such that any error in denying the motion to withdraw was harmless. *See State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). While defense counsel presented a vigorous defense for his client throughout trial, despite being placed in this untenable position, we disagree that the error was harmless. Defense counsel told the court that his ability to zealously advocate for appellant was compromised because his arguments to the jury were inconsistent with the knowledge he gained. Defense counsel further expressed deep concern that "this [situation] subject[ed his] law firm to a lawsuit, [or] a bar complaint," even if it turned out that the current employer's claim had no merit.

Although the trial court equated this situation to that of a fee dispute between attorney and client where the denial of a motion to withdraw may be warranted, that comparison is inapt. *See Brooks v. State*, 980 So. 2d 1095, 1095-96 (Fla. 4th DCA 2008) (finding trial court's denial of motion to withdraw based on client's nonpayment did not depart from the essential requirements of law where the motion was filed on the eve of trial and there was not ample time for the client to procure new counsel). Here, defense counsel claimed appellant placed him in a situation where he feared that he would be a target of both litigation and a potential Bar investigation related to the fee paid to him. Defense counsel's concerns went beyond the mere possibility of nonpayment.

Under these circumstances, defense counsel established an actual conflict of interest, and the trial court should have permitted defense counsel to withdraw.

Based on the foregoing, we reverse and remand for a new trial. As a result, there is no need to address appellant's other points on appeal, including the issue relating to appellant's non-participation in the *ex parte* sidebar conferences between her attorney and the trial judge.[1]

*Reversed and remanded for new trial.*

MAY and CIKLIN, JJ., concur.

CIKLIN, J., concurs specially with opinion

CIKLIN, J., specially concurring.

While I agree with the majority opinion and our decision to reverse, I believe the primary error in this case was the defendant's de facto exclusion from her own trial. I write separately to call attention to a scenario that could easily repeat itself. A scenario fraught with serious constitutional implications that—in my opinion—could lead to a reversal every time.

During repeated ex parte bench conferences between defense counsel and the trial judge, defense counsel expressed his distaste for continued representation of the appellant. The appellant had a Sixth Amendment right to participate in these discussions, yet she was not present at the bench and the record reflects she could not hear what was being said. The appellant might as well have been in the courthouse coffee shop because she would have been just as "absent" from the proceedings.

"[O]ne of a criminal defendant's most basic constitutional rights is the right to be present in the courtroom at every critical stage in the proceedings." *Jackson v. State*, 767 So. 2d 1156, 1159 (Fla. 2000). "This right extends to 'any stage of the criminal proceeding that is critical to its outcome if [the defendant's] presence would contribute to the fairness of the procedure.'" *Id.* (alteration in original) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)).

However, "[t]he constitutional right to be present does not extend to bench conferences involving purely legal matters because the defendant's presence would be of no assistance to counsel." *Rutherford v. Moore*, 774 So. 2d 637, 647 (Fla. 2000).

---

[1] We decline to reach the constitutional question presented in the concurring opinion because there are other grounds upon which to dispose of this case. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case." (Citations omitted)); *accord Gaudet v. Fla. Bd. of Prof'l Eng'rs,* 900 So. 2d 574, 581 (Fla. 4th DCA 2004); *State v. Efthimiadis,* 690 So. 2d 1320, 1322 (Fla. 4th DCA 1997).

In support of her assertion that she was entitled to be present at the bench during the ex parte conferences, the appellant relies on *Sims v. State*, 135 So. 3d 1098 (Fla. 2d DCA 2013). In that case, on the second day of trial, after defense counsel cross-examined a state witness, the defense attorney, prosecutor, and trial judge met in chambers to discuss the possibility that defense counsel was impaired. *Id.* at 1099-1100. The prosecutor disclosed that people in the courtroom had voiced concerns that defense counsel's speech and comprehension seemed abnormal. *Id.* at 1100. The trial court was likewise concerned and asked counsel whether she had been consuming alcohol. *Id.* Defense counsel denied the allegations and explained that she had a "knock-down drag-out" with another judge and that she was taking vitamins and aspirin for a cold. *Id.* The trial court noted that jury selection had been a "bizarre experience." *Id.* Defense counsel asked the trial court to declare a mistrial, but the court declined. *Id.* The next day, trial resumed, and defense counsel appeared to be competent during the remainder of the proceedings. *Id.* The jury returned a verdict for a lesser offense. *Id.*

On appeal, Sims argued he had a constitutional right to be present during the in-chambers conference. *Id.* The Second District agreed and explained that "the trial judge and the attorneys were not discussing purely legal issues," but instead were "trying to determine whether Mr. Sims' attorney was competent to proceed and, if not, why she was impaired." *Id.* at 1101. In doing so, "[t]hey were addressing a factual issue relating to Mr. Sims' right to have competent counsel at this trial." *Id.* The court found the conference was thus a critical stage of the proceedings, and it observed that nothing in the record indicated that Sims was aware of the subject of the conference or that he knowingly waived his right to attend. *Id.*

The appellate court further found that "[t]he harm that Mr. Sims established was the deprivation of his Sixth Amendment [r]ight to presence." *Id.* at 1102. The court based its finding of harm on the fact that the judge and attorneys "addressed the competence of Mr. Sims' counsel under circumstances where neither the trial court nor the assistant state attorney was convinced that defense counsel was capable of representing the defendant at that moment in time." *Id.* The appellate court also reasoned that if Sims had participated in the conference, the trial judge would have had to appoint him independent counsel, who likely would have advised him to move for a mistrial. *Id.* The Second District opined that such a motion would have been meritorious. *Id.*

*Sims* is obviously factually distinguishable from the instant case in that there was no issue here of defense counsel being under the influence of a substance. But, as in *Sims,* the private discussions here went to the core of the appellant's right to effective representation. Defense counsel asserted that he felt victimized by the appellant's actions and could not advocate for her because she had

7

subjected him to a potential lawsuit.

This is not a case where purely legal issues were discussed during the conferences and where the appellant could not have offered any valuable input. *See Seibert v. State*, 64 So. 3d 67, 85-86 (Fla. 2010) (finding no error where defendant was absent from hearings where legal argument was offered on various motions, including motion to continue and motion to appoint mitigation expert in addition to mental health experts and investigators already appointed, and where legal argument was offered on issue of whether a special master should be appointed to conduct an in camera review of letters). Clearly, if the appellant had been present at the bench for the discussions and had been appointed independent counsel, important decisions could have been made and entered upon the record. The appellant may have sought to discharge counsel and either retain new counsel or have counsel appointed to represent her. It appears that a request to discharge counsel could very well have warranted relief. The defendant had a constitutional right to be present for these crucial conversations.

The state asserts that the appellant "ratified" her absence from the sidebar discussions when she confirmed for the trial court that she was aware of the discussions and was still satisfied with counsel's representation. *See Garcia v. State*, 492 So. 2d 360, 364 (Fla. 1986) (finding that defendant's exclusion from bench conference involving jury question was later ratified by defendant in statements he and counsel made to the trial court and thus there was no error). To support its argument of ratification and waiver, the state relies on the colloquies between the court and the appellant regarding her satisfaction with defense counsel's representation. However, for purposes of the Sixth Amendment, it must be clearly apparent from these colloquies and the record before us that the appellant was aware of the depth of defense counsel's mistrust and contempt for his client and his palpable distaste for any type of continuing representation.

The state similarly relies on defense counsel's indication to the trial court that he addressed the matter with the appellant. But defense counsel did not make it clear that he expressed to the appellant the angst and apprehension he felt about the dire situation. Instead, in response to the trial court's question regarding whether the appellant knew about the subsequent employer's allegations, defense counsel informed the court that he had "to let the client know what's going on now or else she would be like, 'What's going on with the judge and I have no idea.'" He also indicated that he informed the appellant of the allegations. Defense counsel's statements do not negate the possibility that he simply informed the appellant that he was required to inform the trial court of a potential conflict of interest. This appellant had a constitutional right to be present at all crucial stages of her trial where "[her] absence might frustrate the fairness of the proceedings." *See Garcia*, 492 So. 2d at 363. The discussions that took place at the bench were not administrative or procedural and because

the appellant's presence would have had a reasonably substantial relationship to her opportunity to present an effective defense, her presence was essential. Alternatively, the defense attorney and the trial judge were required to show a valid, informed waiver of the appellant's fundamental right to be present during the numerous times that defense counsel approached the bench without his client. Accordingly, any attempt to invoke or prove waiver of the important constitutional right to be present for trial must be far more gleanable from the record than exists here.

The state asserts that defense counsel did a laudable job representing the appellant and thus any error was harmless.[2] I cannot agree with that analysis because fundamental fairness was thwarted where the appellant was deprived of the opportunity to be present at the bench conferences, to have knowledge of defense counsel's assertion that his ability to advocate for the appellant was compromised, and to thereafter seek relief based on that full, complete, on-the-record knowledge. *See Sims*, 135 So. 3d at 1102.

The majority declines to entertain this issue based on the proposition that it should not do so where the case can be decided on other grounds. But the maxim upon which it relies primarily involves cases where the constitutionality of a statute was challenged. There is no statutory challenge here. While this court can certainly decline to address one ground asserted on appeal where disposition on another ground renders the other ground moot, it is not required to do so. I would find on these facts that the trial court erred in not granting the motion to withdraw *and* in excluding the appellant from the bench conferences once it became apparent that she was constitutionally entitled to be present.

* * *

***Not final until disposition of timely filed motion for rehearing.***

---

[2] The appellant did not object to the error below. However, case law indicates that this type of error is subject to harmless error analysis even when the error is not raised before the trial court. In *Sims*, 135 So. 3d at 1099, a communication took place in the judge's chambers during a trial recess called by the trial court. The Second District opined that where a defendant's absence during a critical stage of the proceedings is not raised until appeal and is thus unpreserved, "the notion that [the error] should be treated as a fundamental error, with the burden shifted to the defendant to prove the error was harmful, is questionable. Fundamental error assumes that the defendant had the opportunity to object and did not." *Id.* at 1102 (citation omitted).

9