# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

——————————————

No. 1D2021-3588

——————————————

RAYMOND PROFIT,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

——————————————

On appeal from the Circuit Court for Alachua County.
James M. Colaw, Judge.

January 17, 2024


RAY, J.


Raymond Profit was indicted for first-degree murder with a firearm (count I) and robbery with a firearm or deadly weapon (count II). After a jury trial, he was convicted as charged on count I with special findings that he possessed and discharged a firearm resulting in the victim's death. On count II, he was convicted of the lesser-included offense of petit theft. He was sentenced to life in prison on count I and time served on count II.

On appeal, he first argues that his first-degree murder conviction should be vacated because it could have been based on a legally inadequate theory. He next argues that his trial attorney provided ineffective assistance of counsel due to his failure to move for an arrest of judgment. We affirm.

## I

To begin, Profit challenges his first-degree murder conviction because the jury's verdict could have rested on an inadequate legal theory. He contends that the State presented two alternative theories of first-degree murder: (1) premeditated murder and (2) felony murder based on the commission of a robbery. The underlying offense of robbery was separately charged in count II. Yet the jury convicted him of the lesser offense of petit theft in count II, which is only a misdemeanor. Because the general verdict does not specify which theory of first-degree murder the jury relied on, Profit argues that the jurors may have erroneously believed that he could be convicted of felony murder based on the commission of a theft.

A true inconsistent verdict on legally interlocking charges can be reversible error. *Brown v. State*, 959 So. 2d 218, 220–21 (Fla. 2007) (citing *State v. Powell*, 674 So. 2d 731, 732–33 (Fla. 1996)). A true inconsistent verdict occurs when the acquittal of one charge negates an element of another. *Id.* For example, "convictions for lesser included misdemeanors of a separately charged underlying felony negate the essential underlying felony element of felony murder." *Id.* at 221; *see also Morris v. State*, 349 So. 3d 491, 493 (Fla. 1st DCA 2022) (holding that the jury rendered a true inconsistent verdict when it convicted the defendant of first-degree felony murder while acquitting him of the underlying felony).

Here, however, the error claimed by Profit was not preserved, and he cannot show a fundamental error.

Profit raised this issue in a motion to correct sentencing error filed under Florida Rule of Criminal Procedure 3.800(b)(2). But a rule 3.800(b)(2) motion is meant to correct "'harmful errors in orders entered as a result of the sentencing process.'" *Jackson v. State*, 983 So. 2d 562, 572 (Fla. 2008) (quoting Fla. R. Crim. P. 3.800 court cmt.). "[S]uch a motion is not the correct procedural vehicle for attacking the merits of an underlying criminal conviction." *Echeverria v. State*, 949 So. 2d 331, 335 (Fla. 1st DCA 2007).

Profit does not argue that his life sentence is illegal or erroneous. Instead, he challenges the validity of his conviction and

2

seeks to have it vacated for a new trial. This claim cannot be raised in a rule 3.800(b)(2) motion. *See Dorsett v. State*, 873 So. 2d 424, 425–26 (Fla. 3d DCA 2004) (holding that an error does not become a sentencing error simply because a successful challenge to defendant's conviction would also result in his sentence being vacated). Consequently, to succeed on appeal, he must show a fundamental error. *See Jackson*, 983 So. 2d at 574.

Fundamental error imposes a difficult burden on a defendant. *Cf. Sims v. State*, 135 So. 3d 1098, 1101–02 (Fla. 2d DCA 2013) (describing fundamental error as the shifting of the burden to the defendant to prove a harmful error while the harmless error analysis puts the burden on the State to prove that the error was harmless beyond a reasonable doubt). "Fundamental error has been defined as one that goes to the essence of a fair and impartial trial, error so fundamentally unfair as to amount to a denial of due process." *Scoggins v. State*, 691 So. 2d 1185, 1189 (Fla. 4th DCA 1997). A fundamental error must result in prejudice. *See Calloway v. State*, 210 So. 3d 1160, 1191 (Fla. 2017) ("Fundamental error must amount to a denial of due process, and consequently, should be found to apply where prejudice follows."); *Jackson*, 983 So. 2d at 576 (Fla. 2008) ("By its very nature, fundamental error has to be considered harmful. If the error was not harmful, it would not meet our requirement for being fundamental . . . ." (quoting *Reed v. State*, 837 So. 2d 366, 369–70 (Fla. 2002))).

Legally inconsistent verdicts can constitute fundamental error. *See Zelaya v. State*, 257 So. 3d 493, 497 (Fla. 4th DCA 2018). And while the existence of a valid alternative legal theory does not save a true inconsistent verdict when the issue is preserved, it is a key factor in a fundamental error analysis. For instance, in *Zelaya*, Florida's Fourth District Court of Appeal reversed a conviction for aggravated battery with a deadly weapon when the jury's finding of guilt for that offense conflicted with the findings on the three robbery counts and an attempted robbery count arising from the same incident. 257 So. 3d at 496. In the robbery and attempted robbery counts, the defendant was charged with committing the offenses with a firearm or deadly weapon, but he was convicted of the lesser offenses of robbery with a weapon and attempted robbery with a weapon. *Id.* The Fourth District reasoned that by acquitting the defendant of the greater robbery offenses, the jury

found as a matter of law that he did not possess a firearm or deadly weapon during the offenses. *Id.* No alternative theory of aggravated battery had been alleged or proven. *Id.* Therefore, despite the defendant's failure to preserve the error, the Fourth District reversed, concluding that the error was fundamental. *Id.* at 497.

Similarly, in *Proctor v. State*, 205 So. 3d 784 (Fla. 2d DCA 2016), the defendant was charged with committing two crimes against the same victim: (1) aggravated battery with a deadly weapon on a person over sixty-five and (2) aggravated assault with a deadly weapon on a person over sixty-five. *Id.* at 785. He was convicted of the aggravated assault charge with a finding that he did not actually possess a firearm. *Id.* at 786. Yet no evidence or argument was presented as to the defendant's possession of a different deadly weapon. *Id.* at 787. Nor was the jury instructed on the alternative theory of aggravated assault with intent to commit a felony. *Id.* The verdict refuted any suggestion that the jury intended to pardon the defendant of the firearm possession. *Id.* at 789. Despite the evidence that the defendant used a firearm during both offenses, the jury also found the defendant guilty of the lesser offense of battery on a person over sixty-five instead of aggravated battery with a deadly weapon on a person over sixty-five. *Id.* at 788. Thus, the jury's findings indicated that it did not believe that the defendant used the firearm during either offense. *Id.* Because the jury's finding on the aggravated assault charge negated an element of the offense, Florida's Second District Court of Appeal concluded that the jury had convicted the defendant based on a theory not charged in the information and that this amounted to fundamental error. *Id.* at 789.

Here, unlike *Proctor* and *Zelaya*, the evidence supported two valid alternative theories of first-degree murder: premeditated murder and felony murder during the commission of an *attempted* robbery.

There is no question that the jury believed that Profit shot and killed the victim. In connection with count I, the jury found that Profit actually possessed and discharged a firearm, resulting in the victim's death.

4

The State's theory was that the motive for the shooting was a debt. While Profit testified that the victim did not owe him money, that testimony was undermined by the evidence of the victim's large drug transactions—with some drugs purchased for his personal use—at a time when he had money troubles. Profit testified that after meeting the victim in mid-March, he sold the victim $200 to $300 worth of crack cocaine on fifteen to twenty occasions. Around that time, the victim was also buying drugs from three other drug dealers. One dealer testified to selling the victim $100 to $200 worth of crack cocaine four or five times. But the victim's fiancée testified that his construction business was in financial trouble. His financial difficulties had caused him to sell drugs to support his family. The medical examiner testified that when the victim died on March 29, 2011, he had cocaine and Oxycodone in his system in concentrations consistent with substance abuse.

Profit's testimony that the victim did not owe him a debt is also contrary to his own statements. One witness testified that Profit told him that he shot the victim in the head because the victim owed him between $1,600 and $1,800. In a recorded conversation, Profit told a confidential informant that the victim owed him money, so he lured the victim into a meeting by pretending that he was not worried about the debt. When the victim could not pay what he owed, Profit shot him. At trial, Profit acknowledged the accuracy of the recorded conversation and confirmed that he had made those statements.

The circumstances of the victim's death further support premeditation. Profit called and texted the victim on March 29 to set up a drug deal. The victim went to meet Profit at Profit's apartment complex inside an apartment the victim had been hired to renovate. The victim was later discovered in the bathroom, slumped against the wall and the bathtub. He had been shot four times—twice in the head, once in the torso, and once through the arm. Three of the four gunshot wounds were fatal. He had no defensive wounds. The blood spatter on the wall suggested that he was shot while he was sitting or kneeling on the bathroom floor. Taken together, Profit's actions in luring the victim to the apartment, his intent to make the victim pay his debt or be punished for it, and the way the victim was killed all show

premeditation. *See Barnes v. State*, 218 So. 3d 500, 504 (Fla. 5th DCA 2017) ("Premeditation can be inferred from facts that include: the nature of the weapon used; the presence or absence of adequate provocation; previous difficulties between the parties; the manner in which the homicide was committed; and/or the nature and the manner of the wounds inflicted.").

The evidence also supported the theory of felony murder during the commission of an attempted robbery. At the time of his death, the victim owed Profit money. When the victim was discovered, his pockets were turned inside out. He had been using his cellphone just before he died, but his cellphone was missing. He did not have a wallet, identification, or money to buy drugs. While this suggested that his possessions had been removed from his person, it was unclear what was taken from him. Perhaps the jury determined that Profit tried to rob the victim and was thwarted. That finding would not conflict with Profit's conviction for theft. A theft can be accomplished by an attempt to take property. *See* § 812.014, Fla. Stat. (2011) (defining "theft" to include endeavoring to obtain the property of another); *State v. Santo*, 693 So. 2d 139, 140 (Fla. 2d DCA 1997) ("Because the statute includes the phrase 'or endeavors to obtain or to use,' the state proves a completed theft 'when an attempt, along with the requisite intent, is established.'" (quoting *State v. Sykes*, 434 So. 2d 325, 327 (Fla. 1983))). Nor is this conclusion undermined by the jury's failure to separately convict Profit of attempted robbery because the jury was not instructed on that lesser-included offense in connection with count II.

Not only does the evidence support these two valid theories of first-degree murder, but neither the State's arguments nor the jury instructions allowed the jury to convict Profit of felony murder based on a theft. The State's opening statement framed the evidence as proving either premeditated murder or felony murder during a robbery. In the State's closing, it argued that the jury could convict Profit of felony murder during a robbery because he shot the victim while trying to forcibly take the victim's wallet, cash, and/or cellphone. And when the trial court instructed the jury on the elements of felony murder, the jury was not merely advised that felony murder required proof that Profit killed the victim during the commission of a felony. The instructions

required the State to show that Profit killed the victim during the commission or attempted commission of a robbery. They defined the elements of robbery and attempted robbery, as well as the term "principals in the commission of robbery." They did not mention theft. Thus, it would be hard to conceive of the jurors interpreting those instructions as allowing a conviction for felony murder based on the underlying offense of theft. *Cf. Evans v. Michigan*, 568 U.S. 313, 328 (2013) ("[A] jury is presumed to follow its instructions." (quoting *Blueford v. Arkansas*, 566 U.S. 599, 606 (2012))).

While Profit stresses the possibility that the jury convicted him based on an invalid felony murder theory, a conceivable possibility of prejudice does not establish a fundamental error. Especially in circumstances like these, where that possibility is so remote. The jury instructions, findings, arguments, and evidence supported two valid legal theories. And it is illogical to conclude that despite the arguments and jury instructions defining felony murder exclusively in terms of a robbery or attempted robbery, the jurors mistakenly believed he could be convicted of felony murder based on the underlying offense of theft. Thus, Profit failed to meet his burden of showing fundamental error.

II

In Profit's second issue, he argues that his trial attorney provided ineffective assistance of counsel on the face of the record by failing to move for arrest of judgment. He asserts that counsel should have made the argument described in Issue I.

An unpreserved claim of ineffective assistance of counsel cannot support reversal on direct appeal unless the defendant establishes that a fundamental error occurred. *Steiger v. State*, 328 So. 3d 926, 932 (Fla. 2021). But for the reasons already discussed in connection with Issue I, Profit has failed to show a fundamental error. As a result, his unpreserved ineffective assistance of counsel claim also fails.

AFFIRMED.

BILBREY and LONG, JJ., concur.

7

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____


Jessica J. Yeary, Public Defender, and Richard M. Bracey, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Adam B. Wilson, Assistant Attorney General, Tallahassee, for Appellee.